**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Lloyd Oren HOLSEY, Defendant-Appellant.**

**No. 165–68.**

United States Court of Appeals Tenth Circuit.

Aug. 27, 1969.

Donald E. Cordova, Denver, Colo., for defendant-appellant.

Guy L. Goodwin, Asst. U. S. Atty. (Benjamin E. Franklin, U. S. Atty., on the brief), for plaintiff-appellee.

Before BREITENSTEIN, HILL and HICKEY, Circuit Judges.

BREITENSTEIN, Circuit Judge.

After a jury trial, the defendant-appellant Holsey was found guilty of bank robbery with a firearm in violation of 18 U.S.C. § 2113(a), (d). He appeals from the judgment imposing sentence.

The National Bank of Wichita, in Wichita, Kansas, was robbed on July

5, 1967, by a man who used a pistol to intimidate a teller. On October 28, 1967, Holsey was stopped by a Kansas highway patrolman for speeding. At the time, he was driving a 1961 Thunderbird, said his name was Jack Weber, and gave a residence address in Hutchinson, Kansas. The patrolman later learned that the Thunderbird belonged to a Lloyd Holsey. This information was given to agents of the F.B.I. who knew that Holsey was wanted on a federal warrant for unlawful flight to avoid a Kansas prosecution for burglary and that Holsey had been identified as the robber of the Wichita bank. On November 1, agents observed the Hutchinson address and the Thunderbird parked in the driveway. About 2:30 P. M., they surrounded the house and with the use of a bull horn commanded Holsey to come out. He did so and was arrested. The house and the Thunderbird were searched immediately and various guns, documents, and other property were seized. The defendant's motion to suppress the evidence so seized was overruled as were his objections to its admission at the trial.

The arrest of the defendant was lawful and is not challenged. The question is whether the search of the house and automobile, and the subsequent seizures, were permissible as incidental to the arrest. The record establishes that the arrest was made outside of the house but does not further define the point where it occurred. The items seized as a result of the house search were found beneath the back porch and in a bedroom.

In Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, the Court considered an arrest in a house and a search of the entire house. The Court limited the area which might be searched to that "from within which he [the person arrested] might have obtained either a weapon or something which could be used as evidence against him." On the same day that the Chimel decision was announced, the Court decided Von Cleef v. New Jersey, 395 U.S. 814, 89 S.Ct. 2051, 23 L.Ed.2d 728, and Shipley v. California, 395 U.S. 818, 89 S.Ct. 2053, 23 L.Ed.2d 732. In those decisions, the Court made clear that the question of the retroactivity of Chimel would await future action. For reasons hereafter stated, we find that consideration of retroactivity is unnecessary.

In Shipley the officers had information that the defendant was involved in a robbery. They went to his home and were permitted by his wife to enter and search. After finding rings taken in the robbery, they staked out the house and waited for the defendant. They arrested him that evening when he returned and alighted from his car. The house was then searched a second time and a jewelry case stolen in the robbery was found under a couch. The Court held that the second search was unlawful under pre-Chimel standards.

In the case at bar the defendant came out of the house and was arrested. In Shipley the defendant alighted from his car and was arrested. In each case the arrest was outside of the house and the house was immediately searched. We find no distinction between the two searches. The Court held that the Shipley search was bad under pre-Chimel standards. That is enough to dispose of our case. The search of the house was unlawful and the evidence seized should have been suppressed.

The question of whether the search of the automobile was permissible under pre-Chimel standards requires separate consideration. In Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, and Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, the Court distinguished between the search of a building and the search of a conveyance. In each of those cases the officers had probable cause to believe that the car stopped and searched was carrying contraband. In our case the automobile was not moving and the officers had no reason to suspect contraband.

Preston v. United States, 376 U.S. 364, 366–367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777, also distinguishes between a search

of a vehicle and the search of a house and says that the right to search incident to a lawful arrest "extends to things under the accused's immediate control, * * and, to an extent depending on the circumstances of the case, to the place where he is arrested." In Preston the Court rejected evidence obtained by a search of a car which, after the arrest, had been towed to a garage. In the case before us, the car was searched at the spot where it was found.

Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145 says that the right to search covers the "place" where the arrest was made. Stoner v. California, 376 U.S. 483, 486, 84 S.Ct. 889, 11 L.Ed.2d 856, permits a search of "the immediate vicinity of the arrest." Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, upheld the search of a 4-room apartment after an arrest in the living room thereof. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653, approved the search of a one-room business office after an arrest therein. Harris and Rabinowitz, were expressly overruled by Chimel.

United States v. Francolino, 2nd Cir., 367 F.2d 1013, 1016–1018, cert. denied 386 U.S. 960, 87 S.Ct. 1020, 18 L.Ed.2d 110, was decided before Chimel and discusses the standards then applicable. In that case the arrest was made in the house and subsequently a car in the driveway was searched. The Court discussed the Supreme Court decisions which we have mentioned and said that it could see no reason "why a car parked immediately outside a house should stand better than a room inside it which was not the place where the defendant was arrested." 367 F.2d 1013 at 1017. The force of that decision is weakened by the approval of the search on the alternative theory that the officers had reasonable grounds to believe that the car contained contraband and that the forfeiture statute authorized the search.

In the case before us the respective locations of the arrest and the parked car are not made clear. All we know is that the arrest was outside of the house and the car was in the driveway. Even accepting the Francolino conclusion that a car in the driveway does not differ from a room other than where the arrest was made, we still have a problem.

■ The Thunderbird was purchased by the defendant in Nashville, Tennessee, subsequent to the bank robbery. The arrest occurred nearly four months after the robbery. Prior to the arrest the only connection which the officers had between the car and Holsey was that he was driving it during the speeding violation, that the car was registered in his name, and that the car was parked in the driveway of the residence which he had given as his address at the time of the speeding. The articles seized from the glove compartment of the car and introduced in evidence were two marked road maps, a Las Vegas, Nevada, hotel receipt, and a Nashville hotel key. These items were admitted to show activities after the robbery and sudden access to funds.

The Supreme Court has condemned "a general exploratory search for merely evidentiary materials tending to connect the accused with some crime." Harris v. United States, 331 U.S. 145, 153, 67 S.Ct. 1098, 1102, 91 L.Ed. 1399; see also Go-Bart Importing Company v. United States, 282 U.S. 344, 358, 51 S.Ct. 153, 75 L.Ed. 374, and United States v. Lefkowitz, 285 U.S. 452, 465, 52 S.Ct. 420, 76 L.Ed. 877. The instant record contains no basis for a belief by the agents that the car "would contain instruments or fruits of the crime for which the arrest was made." See United States v. Francolino, 2nd Cir., 367 F.2d 1013, 1017.

In our opinion the search of the car, like the search of the house did not satisfy pre-Chimel standards and the items seized should not have been received in evidence.

■ Three witnesses identified the defendant as the bank robber. They each observed a line-up conducted a few days after the arrest. The bank robbery charges had not then been filed. The defendant was represented at the line-up

by two attorneys who were his counsel in the pending burglary charges. These attorneys testified at the trial and described the line-up. The line-up included six men of about the same height and weight. Their hair color varied from dark to blond. The defendant argues that the line-up was improperly suggestive because he was the only participant with blond hair. The officers gave him an opportunity to wear a dark wig but he rejected it. We are convinced that in the circumstances the line-up was not unnecessarily suggestive and conducive to mistaken identification. See Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199. We believe that the requirements of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, were fully met.

The trial court permitted the prosecution to cross-examine one of its witnesses who was hostile and to introduce impeaching testimony. The action of the court was proper. See Brooks v. United States, 10 Cir., 309 F.2d 580, 582.

Because the unlawful searches require the reversal of the judgment, the other claims of error, which may not arise in a second trial, need not be considered.

Reversed.