**UNITED STATES of America,
Plaintiff, Appellee,**

v.

**Waymon Austin WYNN, Defendant,
Appellant.**

**No. 182–69.**

United States Court of Appeals
Tenth Circuit.

Sept. 5, 1969.

Rehearing Denied Sept. 25, 1969.

Loren L. Mall, Denver, Colo., for appellant.

John E. Green, Asst.U.S.Atty. (B. Andrew Potter, U.S.Atty., with him on brief), for appellee.

Before MURRAH, Chief Judge, and TUTTLE * and BREITENSTEIN, Circuit Judges.

MURRAH, Chief Judge.

Waymon Austin Wynn was indicted and found guilty by a jury of robbing a federally insured bank in violation of 18 U.S.C. § 2113. On appeal he asserts numerous errors.

He first complains of the prejudicial effect of the instruction given the jury after they had reported that they were unable to agree. When they were recalled to the courtroom they were instructed, without objection, by Judge Daugherty:

"The court would like to advise you that if the jury is unable to reach a verdict in the case it is necessary then for the judge to declare what is known as a mistrial. This means that the case will have to be tried all over again before another jury. As you can easily see, this involves considerable expense and considerable effort. And it is something that we try to avoid, hope that we can avoid in all cases for the purposes of economy. I don't think we will get any better jury if we tried the case again than we have in the box now, nor do I feel that the case will be any better presented to you than it is now.

"So, it is—it is necessary that we do our utmost to avoid the declaration of a mistrial in the case. So, in this connection, the court wishes to remind you of the facts that this defendant is presumed innocent of this charge and to remind you that the burden of proof is upon the government to establish guilt as charged and the essential elements involved beyond a reasonable doubt before you should vote to convict.

"The Court will ask the jurors to retire and resume your deliberations with this explanation and in doing so the court would ask that you jurors listen to your fellow jurors and what they have to say and to re-examine your own views and your own position and your own thinking about the case.

"In other words, sit as a jury and listen to each other and if you find that your position is wrong, it is completely proper for you to change your mind. Now, in this law business, I change my mind all the time and I do it by listening to lawyers and by reading their briefs and being further apprised and giving the matter further thought. This is one of our processes. So, there isn't anything wrong with you changing your mind, provided that you do not give up any honest convictions you may have about any of the facts of the case.

"The Court would not suggest to any of you to abandon an honest conviction and belief that you have about the case, or any of the facts about the case. But, I would merely say that you ought not to turn deaf ears to what your fellow jurors have to say. You should constantly re-examine your own position and your own thinking about the matter and it is hoped that the jury can reach a unanimous verdict in the case.

"As you know, it has taken us considerable time to try this case. There has been a great many witnesses come from long distances to be here. We hope we won't have to do this again. So, the court will ask you gentlemen if you will please, retire again in the custody of the bailiffs and resume the deliberations again and it is hoped that you can reach a verdict in the case."

We recently reconsidered this type of supplemental charge in United States v. Winn, 411 F.2d 415 (10th Cir.). In that case, after reviewing the case law, we again approved the supplemental instruction as a "proper exercise of [the trial judge's] common law right and

* Of the Fifth Circuit, sitting by designation.

duty to guide and assist the jury toward a fair and impartial verdict", provided they are "given to understand they are not required to give up their conscientiously held convictions." See Burrup v. United States, 371 F.2d 556, 558 (10th Cir.), cert. denied 386 U.S. 1034, 87 S.Ct. 1485, 18 L.Ed.2d 596.

▆▆ But we have repeatedly suggested that the substance of this charge should be included in the original instructions.[1] Indeed, since our decision in United States v. Winn, supra, the Third Circuit has outlawed this type of charge as being subtlely coercive and "an invitation for perennial appellate review." United States v. Fioravanti, 412 F.2d 407 (3rd Cir.). Like the Third Circuit, we refrain from reversing for failure to heed our suggestions in Burroughs v. United States, 365 F.2d 431, 434 (10th Cir.) and repeated in United States v. Winn, supra. But we again call attention to the inherent danger in this type of instruction when given to an apparently deadlocked jury and reiterate the suggestion that, if it is given at all, it be incorporated in the body of the original instructions. We make this in the form of a suggestion, confident

it will be heeded in the conduct of future jury trials.

In his next issue, Wynn challenges the validity of the search of his automobile and the consequent admission in evidence of a pistol and three fired cartridge cases found in the car and the car's tires, which matched casts taken from the alleged getaway route.

On a verbal motion to suppress, Judge Daugherty held a hearing outside the presence of the jury. The FBI agents testified essentially that they approached Wynn's home at about 12:30 a. m. with an arrest warrant. The lights were out and the Wynn family was apparently asleep. When Wynn appeared at the door in response to the agent's knock, he was arrested and advised of his Miranda rights. He made no statement. When the agents began to search the house, Wynn asked if they had a search warrant and was advised none was needed. He was then requested to consent to the search of the automobile and either read, or had read to him, a waiver form, which he signed.

He now argues that when the agents advised they needed no warrant to search the house,[2] he understood them

---

1. See American Bar Association Standards on Criminal Justice Relating to Trial by Jury, Part V, Jury Deliberations and Verdict, and particularly § 5.4(a) and (b):

    "Length of deliberations; deadlocked jury.

    (a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

    (i) that in order to return a verdict, each juror must agree thereto;

    (ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

    (iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

    (iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

    (v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

    (b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals."

2. See Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, where the Supreme Court restricted the scope of the search of a house incident to a valid arrest. Since no evidence obtained by virtue of the search of the house was offered or admitted, we have no occasion to consider the application of Chimel to the facts of our case.

to mean that they needed no warrant to search the car also, and that the signing of the consent was thus a useless act.

The trial judge specifically found "that the defendant was placed under arrest at his home, that he was fully advised of his constitutional rights, but he was advised the search warrant wasn't necessary to search his house in response to his inquiry, but he was not advised that a search warrant was not required to search his automobile.

"This is supported by the fact that they didn't obtain a consent to search the house, whereas they did obtain a consent to search the [car].

■ "The Court finds from the evidence that the consent was obtained after being explained of his constitutional rights and the nature of the consent. * * * And that this is voluntary consent to search the [car]."

A careful review of the testimony convinces us that the trial judge was correct. This case is thus clearly distinguishable from United States v. Holsey, 414 F.2d 458 (10th Cir.) in which we condemned an unconsented search of a standing automobile in the vicinity of a lawful arrest as not reasonably incident thereto. And cf. United States v. Humphrey, 409 F.2d 1055 (10th Cir.).

■ Wynn also complains that a confrontation between himself and a potential witness, arranged by federal agents, was unduly suggestive and prejudicial in light of Wade v. United States, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. The evening before Wynn was arrested, Cecilia Dew was brought to his home and asked if he was the man she had earlier seen in the vicinity of the robbed bank shortly prior to the robbery. At first she was uncertain but when he put on sunglasses and a hat and got into his car, at the request of the federal agents, she identified him as the same man. Again, we have reviewed the record and find no reversible error. The fact of the confrontation was brought out on cross-examination and Wynn's counsel made no motion to strike her identification testimony, or other objection. Rule 51, Fed.R.Crim.P., 18 U.S.C. and Bond v. United States, 397 F.2d 162 (10th Cir.), cert. denied 393 U.S. 1035, 89 S.Ct. 652, 21 L.Ed.2d 579. And, in any event, this witness's testimony was corroborated by another witness who did not confront Wynn prior to trial. Moreover, two bank tellers identified the defendant, by sight and voice, in court and at a constitutionally permissible lineup, and a third bank employee identified Wynn's voice. Cf. Parker v. United States, 400 F.2d 248 (9th Cir.), cert. denied 393 U.S. 1097, 89 S.Ct. 892, 21 L.Ed.2d 789.

The remaining issues are also without merit. No showing was made relating to allegedly prejudicial pretrial publicity and the issue is thus not presented for appellate review. Likewise, no evidence was offered or received relating to improper communication between certain members of the jury and third parties. We have reviewed the entire record and are convinced that Mr. Wynn received a fair and impartial trial. The judgment is affirmed.