**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Dr. Bruce E. HODGES, Defendant-Appellant.**

**No. 72-1790.**

United States Court of Appeals,
Tenth Circuit.

Argued Feb. 22, 1973.

Decided May 21, 1973.

---

Roger D. Stanton, Overland Park, Kan. (David K. Fromme, Kansas City, Kan., on the brief), for defendant-appellant.

Edward H. Funston, Asst. U. S. Atty. (Robert J. Roth, U. S. Atty. and Glen S. Kelly, Asst. U. S. Atty., on the brief), Topeka, Kan., for plaintiff-appellee.

Before HILL and DOYLE, Circuit Judges, and BRATTON, District Judge.

HILL, Circuit Judge.

Appellant was charged in a six-count indictment of unlawfully having sold or caused to be sold and delivered to an agent of the Bureau of Narcotics and Dangerous Drugs (BNDD) six separate quantities of dl-methamphetamine HCL tablets, a "depressant or stimulant drug" within the meaning of 21 U.S.C. § 321(v)(2), in violation of 21 U.S.C. § 331(q)(2).[1] Convictions were had on all counts following a jury trial. On this direct appeal from the convictions, Hodges asserts the commission of numerous errors at the pre-trial, trial and post-trial stages of the case.

The evidence on behalf of the prosecution generally reflects as follows. Hodges was visited on five occasions in February and March, 1971, by an agent of BNDD. On the first three of those visits the agent was able either to purchase from Hodges tablets containing the proscribed drug or obtain prescriptions for such tablets. On the first occasion, February 20, 1971, the agent, after gaining admission to Hodges' office and introducing himself under an alias name, purchased "about thirty" tablets containing methamphetamine. Two days later he returned and received from Hodges two 60-tablet prescriptions for tablets containing methamphetamine. The prescriptions had been written for the agent and his nonexistent "wife," whose fictitious name the agent had given Hodges to enable Hodges to write the prescriptions for larger amounts of the tablets. On February 27, 1971, the agent again returned to Hodges' office and, on that occasion, received three prescriptions: one for the agent under a modification of his assumed name for 30 tablets; one in the agent's alias name for 40 tablets; and one in the alias name of the agent and his "wife" for 60 tablets. The agent was able to obtain the tablets represented by each of the five prescriptions upon presentation to a local pharmacy. These were admitted into evidence with the stipulation of both counsel in each instance that the tablet vials received by the agent upon

---

1. Appellant was indicted under the Federal Food, Drug and Cosmetic Act of 1938 as amended in 1965 (Pub.L. 89–74) and 1968 (Pub.L. 90–639), the applicable statutes at the time of the alleged commission of the offenses, now repealed under § 701(a) of the Drug Abuse Prevention and Control Act of 1970. The subject offenses are now codified at 21 U.S.C. §§ 812, 841.

presentation of the prescriptions contained the drug called for in the prescriptions. The vial of tablets which the agent purchased from Hodges at their first meeting was also admitted with the stipulation that the vial he received contained the drug tablets.

The agent also visited Hodges on two subsequent occasions, March 11 and March 24, 1971. On neither of these occasions were drugs sold or prescriptions made to enable the agent to secure additional quantities of the drug. The two visits are, however, relevant to this appeal by virtue of the agent having recorded the conversations between himself and Hodges with a small recorder strapped to his body. These recordings form the basis of appellant's first assertion of error.

■ Hodges argues that he was entitled as a matter of right to pre-trial discovery and inspection of the tape recordings under F.R.Crim.P. Rule 16(a). He contends he was entitled to this discovery without the necessity of establishing a reason for the discovery as required under F.R.Crim.P. Rule 16(b). Recorded conversations of a defendant clearly fall within the ambit of the discovery provisions of Rule 16.[2] The original motion by Hodges for discovery pursuant to Rule 16(a)(1) requested from the prosecution all tape recordings in its possession of conversations between the defendant and any other person, and particularly between the defendant and a government agent. There was also expressed in the motion a willingness to reciprocate in discovery under the provisions of Rule 16(c). At a pre-trial hearing on the motion, Hodges' request for the tape recordings was granted. The government then filed its motion for reciprocal discovery under Rule 16(c) requesting the court to condition

its prior order granting defendant's discovery on the defendant's permitting the government to discover and copy tape recordings made by the defendant of conversations between himself and the agent. On the basis of the willingness to reciprocate expressed in defendant's discovery motion, the government's reciprocal discovery motion was granted. No tape recordings of the two above mentioned conversations were subsequently exchanged prior to trial.

Resolution of this question must be on whether it was reversible error for the government to fail to turn over to Hodges the two challenged tape recordings. We would first note that broad limits on discovery of a defendant's statements have been applied under Rule 16(a),[3] and that "withholding a defendant's statement should be the exception, not the rule." [4]

We recognize that in application of the nonmandatory provisions of Rule 16(a) to discovery of recorded conversations of a defendant, there has developed a division of opinion among courts applying the rule. In this case we need not consider this divergence of authority.

■ In United States v. Skillman, 442 F.2d 542, 550 (8th Cir. 1971), cert. denied, 404 U.S. 833, 92 S.Ct. 82, 30 L. Ed.2d 63, the court held that the failure of the government to disclose to the defendant a tape recorded conversation of the defendant was not reversible because "[t]he recorded conversation was not a 'relevant statement' under the meaning of Rule 16. It was introduced not as a part of the government's case-in-chief, but on rebuttal. . . . It was not admitted for its truth, but was admitted solely for the purpose of [impeachment]. . . . There was nothing in the statement which had any bearing on the

---

2. United States v. Bryant, 142 U.S.App. D.C. 132, 439 F.2d 642 (1971); Davis v. United States, 413 F.2d 1226 (5th Cir. 1969).

3. "We construe Rule 16(a) as giving defendant almost automatic right to his written or recorded statements or confes-

sions." United States v. Federman, 41 F.R.D. 339, 341 (S.D.N.Y.1967).

4. United States v. Crisona, 416 F.2d 107, 115 (2d Cir. 1969), cert. denied, DeLyra v. United States, 397 U.S. 961, 90 S.Ct. 991, 25 L.Ed.2d 253.

substantive crimes charged." We would, however, emphasize that our reliance on Skillman is not to be interpreted as a license by which a defendant may be denied prior discovery of relevant materials only to be subsequently confronted with the evidence introduced under the guise of rebuttal. The narrow limits of Skillman dictate that the previously undiscovered material, to be admissible on rebuttal, must have first not been subject to prior discovery as a "relevant statement" and that the evidence, devoid of any substantive probative value, be introduced solely for its impeachment value.

■■ In this case the tape recorded conversations in question were not introduced as part of the prosecution's case-in-chief but only after cross-examination by defense counsel had opened the area to their introduction on redirect examination by the prosecution. Additionally, the conversations contained no statements that were relevant to the substantive offenses for which appellant was indicted. Likewise, the government in its motion for reciprocal discovery indicated its belief that appellant also possessed recordings of the conversations. Without here determining whether the prosecution's mere expression of its belief would, standing alone, constitute a sufficient showing to impose the strictures of Rule 16(e) on discovery by the defendant, we would note the trial court, in addition, had before it the expressed willingness of the defendant to reciprocate in discovery. Under these circumstances, the restriction of discovery upon the condition of reciprocity was not error. In any event, the failure to require discovery of the recordings was harmless error in view of the weight of evidence confronting the appellant of the charged transactions and the fact that the recordings of conversations occurring subsequent to the dates of the charged transactions, lacked any substantive connection to the transactions charged.

■■ Appellant next asserts the trial court erred in permitting the BNDD agent to testify on redirect examination by the prosecution concerning the fifth visit to Hodges' office. He contends this visit was not opened on cross-examination; therefore any redirect examination into this area was irrelevant, immaterial, prejudicial and beyond the scope of any prior examination. The scope of redirect examination is committed to the sound discretion of the trial court,[5] and will be reversed only on a showing of abuse of that discretion. The record clearly shows this area of examination was opened on cross-examination with notice of that fact to defense counsel.[6] The prosecution may conduct redirect examination in areas which were the subject of cross-examination.[7] The trial court properly admitted the agent's testimony concerning the fourth and fifth visits.

■ Challenge is next made to the introduction and playing in the presence of the jury of the agent's tape recording of the conversation of the fifth visit on an additional ground. Hodges maintains the recording should have been excluded because portions of the tape were inaudible due to the microphone leads concealed under the agent's clothing having come in contact with and rubbed against the agent's clothing. The admissibility of a tape recording on a challenge that it is unintelligible or inaudi-

5. Boone v. Royal Indemnity Company, 460 F.2d 26 (10th Cir. 1972); Chapman v. United States, 346 F.2d 383 (9th Cir. 1965), cert. denied, 382 U.S. 909, 86 S.Ct. 249, 15 L.Ed.2d 161.

6. The following colloquy occurred between the trial court and defense counsel:

THE COURT: . . . Now, he is opening this up on cross-examination. This is going to open it up for the government if they have anything to the contrary on any conversation, you can understand that.

MR. BAILEY [defense counsel]: I understand that.

7. See United States v. Walker, 421 F.2d 1298 (3d Cir. 1970), cert. denied, 399 U.S. 931, 90 S.Ct. 2261, 26 L.Ed.2d 799; Copes v. United States, 120 U.S.App.D.C. 234, 345 F.2d 723 (1964).

ble is a matter within the sound discretion of the trial judge.[8]

■ Hodges next contends the trial court erred in overruling his motion for mistrial on the basis of the prosecutor's improper comments in the course of final argument. The first comment was related to discounting the significance that only a small gain had been realized on the transactions by Hodges. The prejudicial comment related that this gain would not be recorded as income, therefore would be outside appellant's high income tax bracket. In sustaining defense counsel's objection that the comment was beyond the bounds of any evidence, the court admonished the jury to disregard the comment and further warned the prosecutor that repetition of the matter would result in a declaration of mistrial. In Bailey v. United States, 410 F.2d 1209 (10th Cir. 1969), cert. denied, Freeman v. United States, 396 U.S. 933, 90 S.Ct. 276, 24 L.Ed.2d 232, we stated at 1214, in assessing the effect of "certain questionable remarks," that "unless misconduct on the part of the prosecution can be said to have influenced the jury's verdict, reversal will not be required." We believe from the record that if any alleged error was committed here it was adequately cured by the prompt admonition to the jury to disregard the comment.[9]

■ Appellant also complains it was a misstatement of the law relating to entrapment, thereby requiring reversal of the conviction, when the prosecutor stated in closing argument that a government agent, to gain the confidence of a suspect, may make any statement which the suspect will accept and which will form a basis of trust whereby the suspect will commit the offense. The trial court subsequently properly and adequately instructed on the elements of entrapment. The law as outlined by the trial court and only that law is what the jury is presumed to have followed in its deliberations.[10]

■ Hodges next asserts a question raised by the prosecutor as to why the defendant had not produced other recordings of the conversations made by the defendant himself constituted an impermissible comment on his silence in violation of his Fifth Amendment protections. While it is reversible error for the prosecutor or the trial judge to comment on the failure of a defendant to testify in his own behalf,[11] we do not feel that was the situation here. Rather, in view of the extensive challenges to the accuracy of the recordings by defense counsel and all of the evidence in the case concerning tape recordings, the prosecutor's remark in noting that no other recording had been shown to rebut the accuracy of the government's recording was not error. *See* United States v. Cedar, 437 F.2d 1033 (9th Cir. 1971).

■ We are last confronted with the argument that the challenged tape recordings establish, as a matter of law, that Hodges was entrapped by the government agent into committing the offenses. He contends the conversations as reflected by the tapes clearly show the drug sales were not willingly made, but rather were made out of fear of

8. *See* United States v. Carson, 464 F.2d 424 (2d Cir. 1972), cert. denied, 409 U.S. 949, 93 S.Ct. 268, 34 L.Ed.2d 219; United States v. Skillman, 442 F.2d 542 (8th Cir. 1971), cert. denied, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63; United States v. Carlson, 423 F.2d 431 (9th Cir. 1970), cert. denied, 400 U.S. 847, 91 S.Ct. 94, 27 L.Ed.2d 84.

9. *See* United States v. Wilshire Oil Company, 427 F.2d 969 (10th Cir. 1970), cert. denied, 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 59; Bailey v. United States, 410 F.2d 1209 (10th Cir. 1969), cert.

denied, Freeman v. United States, 396 U.S. 933, 90 S.Ct. 276, 24 L.Ed.2d 232.

10. United States v. Cooper, 464 F.2d 648 (10th Cir. 1972), cert. denied, 409 U.S. 1107, 93 S.Ct. 902, 34 L.Ed.2d 688; Ellis v. State of Oklahoma, 430 F.2d 1352 (10th Cir. 1970), cert. denied, 401 U.S. 1010, 91 S.Ct. 1260, 28 L.Ed.2d 546; Braley v. Gladden, 403 F.2d 858 (9th Cir. 1968).

11. United States v. Nolan, 416 F.2d 588 (10th Cir. 1969), cert. denied, 396 U.S. 912, 90 S.Ct. 227, 24 L.Ed.2d 187.

threats and coercion associated with the name of another criminal which the agent had used to gain Hodges' confidence. "Entrapment as a matter of law exists only when there is undisputed testimony making it patently clear that an otherwise innocent person was induced to commit the act complained of by the trickery, persuasion or fraud of a government agent." United States v. Gibson, 446 F.2d 719, 721 (10th Cir. 1971). It is not improper for the government to set a fair trap for the potential violator so long as the inducement does not extend beyond the creation of an opportunity.[12] The agent's testimony concerning the first three transactions clearly shows appellant's predisposition to commit the offenses charged. Entrapment as a matter of law not being established by the record, the question becomes one of fact for determination by the jury.[13] Under the law and the evidence in the case, the jury was clearly justified in rejecting the asserted entrapment defense.

Affirmed.

---

12. United States v. Hill, 469 F.2d 673 (10th Cir. 1972).

13. United States v. Gibson, 446 F.2d 719 (10th Cir. 1971).