**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Felix Earl LEMON, Defendant-Appellant.**

**No. 73-1584.**

United States Court of Appeals,
Tenth Circuit.

May 29, 1974.

Stephen K. Lester, Asst. U. S. Atty., Topeka, Kan. (Robert J. Roth, U. S. Atty., Adrian M. Farver, and E. Edward Johnson, Asst. U. S. Attys., Topeka, Kan., on the brief), for plaintiff-appellee.

William G. Horlbeck, Denver, Colo. (John M. Law, Denver, Colo., on the brief), for defendant-appellant.

Before HOLLOWAY and BARRETT, Circuit Judges, and DURFEE, Judge, Court of Claims.*

BARRETT, Circuit Judge.

Felix Earl Lemon appeals his jury conviction and sentence for violation of 18 U.S.C.A. § 659.[1] He was indicted along with two other persons, for unlawfully, wilfully, and knowingly (with the intent to convert to their own use) taking and carrying away a large number of cigarettes from a freight depot.

The Government established that the burglary occurred on January 9, 1972, at the Santa Fe Trail Transportation Com-

pany freight depot; that fifty-four (54) cases of cigarettes were stolen; that the cigarettes had a value in excess of $6,000; and that the cigarettes were moving as part of an interstate shipment from Kansas City, Missouri, to Forbes Air Force Base, Kansas.

Two of the Government's witnesses, Edward Louis Robinson and Edward James Paden, had given previous statements implicating Lemon. However, they denied the truth of the prior implicating statements during direct examination. Thereupon the Court permitted the Government the use of their previous statements for impeachment purposes.

On appeal Lemon contends that: (1) the Trial Court erred in permitting the Government to introduce the hearsay statements of Paden which tended to implicate Lemon; (2) it was prejudicial error for the Trial Court to permit the Government to impeach the credibility of its own witnesses without any inquiry to establish a foundation showing surprise and hostility; and (3) the Trial Court erred in refusing Lemon's requested instructions concerning "uncharged misconduct."

I.

Lemon contends that the Trial Court committed reversible error in permitting the Government to introduce hearsay statements made by its witness, Paden, to law enforcement officials, which tended to implicate Lemon in the alleged crime. Lemon argues that since Paden was a co-defendant, although tried separately, all acts and declarations made by him before the conspiracy was formed or after it had been terminated were inadmissible. In support of his contention,

---

* Honorable James R. Durfee, sitting by designation.

1. 18 U.S.C.A. § 659 provides in part:
Whoever embezzles, steals, or unlawfully takes, carries away, or conceals, or by fraud or deception obtains from any pipeline system, railroad car, wagon, motortruck, or other vehicle, or from any tank or storage facility, station, stationhouse, platform or depot or from any steamboat, vessel, or wharf, or from any aircraft, air terminal, airport, aircraft terminal or air navigation facility with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight, express or other property; or . . . .

Lemon relies on our opinion in Mares v. United States, 383 F.2d 805 (10th Cir. 1967), cert. denied 394 U.S. 963, 89 S.Ct. 1314, 22 L.Ed.2d 564 (1969). In Mares we noted:

> The defense argues that no conspiracy was charged and that activities and statements outside the scope of any possible conspiracy were received in evidence. The indictment contained no conspiracy count but charged the defendant and Albert jointly with the substantive offense. We have held that in such circumstances the acts and declarations of one are admissible against the other even though no conspiracy is charged. This rule is subject to the qualifications that the existence of the conspiracy must be shown by independent evidence and that acts or declarations of one conspirator either before the formation or after the termination of the conspiracy are not admissible against a co-conspirator. The record here contains independent evidence of conspiracy to rob the bank and to conceal the proceeds of the robbery. The basic issue is whether the actions and statements complained of occurred after the termination of the conspiracy. 383 F.2d at 809, 810.

Under *Mares,* statements of co-conspirators may be admitted if proven by independent evidence, and if the acts of declarations are made during the conspiracy. This rule has been followed and expanded upon by our court. We recently held in United States v. Coppola, 479 F.2d 1153 (10th Cir. 1973), that statements of co-conspirators are admissible against one another if made during the "continuation" of the conspiracy. See also Green v. United States, 386 F.2d 953 (10th Cir. 1967). Such statements, of course, must be made in "furtherance" of the conspiracy. Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957); Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949); United States v. Coppola, *supra.*

■■ Applying these standards, together with full appreciation that a third Government witness, Robert White, afforded substantial "independent evidence" of the conspiracy, Paden's statement was inadmissible as substantive proof because it was neither in "furtherance" of the conspiracy nor was it made during the "continuation" of the conspiracy. However, the statement was not received into evidence and was used only in a limited, careful manner to impeach Paden. No error was committed.

■■ The confrontation clause of the Sixth Amendment as made applicable to the States by the Fourteenth Amendment is not violated by admitting a declarant's out-of-court statements, so long as he testifies at trial and is subject to cross-examination. The purpose of the amendment is satisfied because the declarants appeared as witnesses in court, under oath, subject to cross-examination, and their demeanor was observed by the trier of fact. California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). We have held that prior inconsistent statements are admissible to impeach or discredit one's witness. United States v. Eaton, 485 F.2d 102 (10th Cir. 1973); Brooks v. United States, 309 F.2d 580 (10th Cir. 1962). Such statements are admissible solely for purposes of impeachment, and then only insofar as they serve to remove the damage of surprise. Such statements cannot be used, by indirection, to present testimony to the jury which the Government expected the witness to supply directly. United States v. Hill, 481 F.2d 929 (5th Cir. 1973).

■ It follows that a prior inconsistent statement may be used solely insofar as it relates to credibility, and in no event is it to be considered for the truth of its contents. United States v. Gilliam, 484 F.2d 1093 (D.C.Cir. 1973). The use of Paden's statement was proper, *if thus limited.*

Our careful review of the Court's instructions leads us to conclude that the usage of the prior Paden statement was

properly limited. The statement was not received into evidence. The Trial Court instructed the jury, *twice,* concerning the statement, as follows:

Members of the Jury, you will recall that there have been witnesses in the case who have testified and have denied making statements that were attributed to them at a former occasion. And they say that—well, the witness Paden said that these were lies that he told. I think the witness Robinson said he hadn't made such statements at all. Now, I have permitted these witnesses who testified to be impeached by permitting the Government's attorney to show that former statements and declarations made by them are contradictory and inconsistent with the answers they have given on the witness stand in this trial. And the witnesses particularly have been James Paden and Edward Robinson. There may have been some others, but my notes don't reveal it. But in the event that did occur with any other witnesses that statement applies with equal force to the impeaching evidence that was offered.

Now the purpose of impeachment is to discredit the witness. It is not to establish the existence of a fact in dispute. Statements made to officers before trial are admissible only to impeach or discredit the witness, and may be—may not be considered by you as competent evidence of the fact to which the former statements relate. Now this rule applies where the Court permits the Government's attorney to impeach a Government witness who is shown to be recalcitrant or hostile. Such impeaching testimony may not be considered by you in determining the guilt or innocence of the Defendant on trial in this case. These statements attributed to these witnesses which they deny or which they now say are false may not be considered as any evidence in support of the charge that the Government has brought against the Defendant.

TR. pp. 465–466.

The Court has permitted some of the witnesses who have testified in this case to be impeached by permitting the Government's attorney to show that former statements and declarations made by them are contradictory or inconsistent with the answers they have given at this trial.

The purpose of impeachment is to discredit the witness and not to establish the existence of a fact in dispute. The statements made to the officers before trial are admissible only to impeach or discredit the witness and may not be considered by you as competent evidence of the fact to which the former statements relate. And this rule applies here where the Court permitted the Government's attorney to impeach a Government witness who is shown to be recalcitrant and hostile. Such impeaching testimony may not be considered by you in determining the guilt or innocence of the Defendant on trial in this case.

TR. pp. 733–734. (Instruction Number 27).

■ It is presumed that jurors will be true to their oath and that they will conscientiously observe the instructions and admonitions of the Court. Ellis v. State of Oklahoma, 430 F.2d 1352 (10th Cir. 1970), cert. denied 401 U.S. 1010, 91 S.Ct. 1260, 28 L.Ed.2d 546 (1971); Welch v. United States, 371 F.2d 287 (10th Cir. 1966), cert. denied 385 U.S. 957, 87 S.Ct. 395, 17 L.Ed.2d 303 (1966). Since the statements were not admitted in evidence and were used only in the limited manner expressed by the Court, and since the jury was properly charged concerning the statements, we hold that the usage thereof was proper.

## II.

Lemon contends that it was reversible error for the Court to permit the United States to impeach the credibility of its own witnesses by the use of prior inconsistent statements without establishing a foundation showing surprise and hostility.

■■ It is established in this circuit that when a party calls a hostile witness or is surprised by the testimony from his own witness, the trial court may, in its discretion, permit the party calling the witness to cross-examine and impeach him. United States v. Eaton, *supra*; United States v. Coppola, *supra*; United States v. Maynard, 452 F.2d 1087 (10th Cir. 1971); United States v. Holsey, 414 F.2d 458 (10th Cir. 1969); Guffey v. United States, 310 F.2d 753 (10th Cir. 1962); Brooks v. United States, *supra*. In United States v. Coppola, *supra*, we held that positive damage and surprise to the calling party are requisite to impeachment via a prior inconsistent statement. The format for impeachment was set forth in Brooks v. United States, *supra*, i. e., that a proper foundation was bringing the statements to the witness' attention and thereafter permitting him to admit, deny or explain them. This procedure was pursued by the Government in impeaching Robinson and Paden.

■■ Just as we have recognized the discretion vested in the trial court, *supra*, so, too, have courts held that the amount of proof necessary to demonstrate "surprise" is largely within the discretion of the trial court and great latitude should be allowed. Lerma v. United States, 387 F.2d 187 (8th Cir. 1968), cert. denied 391 U.S. 907, 88 S.Ct. 1658, 20 L.Ed.2d 421 (1968); United States v. Kahaner, 317 F.2d 459 (2nd Cir. 1963), cert. denied 375 U.S. 836, 84 S.Ct. 74, 11 L.Ed.2d 65 (1963); Bieber v. United States, 276 F.2d 709 (9th Cir. 1960); United States v. Maggio, 126 F.2d 155 (3rd Cir. 1942), cert. denied 316 U.S. 686, 62 S.Ct. 1275, 86 L.Ed. 1758 (1942). The trial court was in a position to hear the testimony of the witnesses and remarks of counsel and to observe the appearances, expressions, and general overall demeanor and reactions of the witnesses and counsel. A trial court alone is best able to appreciate and analyze the degree to which the Government's witnesses are hostile and the degree to which their testimony smacks of surprise. This type of determination by the Court does not invade the province of the jury. United States v. Cooper, 464 F.2d 648 (10th Cir. 1972), cert. denied 409 U.S. 1107, 93 S.Ct. 902, 34 L.Ed.2d 688 (1973). We may not reverse such a determination, absent clear error.

■ With regard to witness Robinson, the only notice to the Government of any possibility of his recantation occurred *during trial*. His attorney stated to the Court at the bench when Robinson was called by the Government that "there are certain discrepancies in that statement from anything he might have made to the officers, and thinks it might have been due to the confusion at the time . . . ." and that ". . . he made no statement concerning the Defendant in this case . . . ." When the Court inquired of Robinson's counsel, he stated that his concern was that the Government may proceed against Robinson on a perjury charge. The Court responded that there was no danger in that regard. Even so, Robinson's obvious reluctance to implicate Lemon when he testified was such that the Court specifically observed that "this witness seems to be awfully reluctant, maybe we can find out what he knows." We believe that the record reflects surprise on the part of the prosecutor when Robinson denied the contents of his prior statement implicating Lemon.

With regard to the witness, Paden, the matter of "surprise" is more elusive. The Government, at trial, was in possession of an F.B.I. investigative report which referred to an interview between Agent Thompson and witness Robert White which occurred about two months prior to trial. White told Thompson that Attorney Jarvis, who represented Lemon at all times, talked with him in the county jail about two months prior to trial and advised White to keep his mouth shut about "the Lemon deal"; that White then told Jarvis that he (White) would not testify against Lemon; that

he (White) wanted Lemon to leave him alone because he had been previously beaten by one McPherson and one Gilbert; that Jarvis responded that it was fine that White would not testify against Lemon and that he (Jarvis) understood that Paden had been lying to the F.B.I. and would not testify against Lemon; that Jarvis remarked that Lemon had hired McPherson and Gilbert to beat White up and that it was a good thing he (White) had not signed a statement. Attorney Jarvis did not at any time deny the contents of the report. Significantly, while counsel for Lemon did generally object to the impeachment of Paden, he acknowledged that he was doing so "for the record" *but he specifically acknowledged that "certainly under the new federal rules the prosecution has the right to impeach their own witness."* Attorney Jarvis had not advised the Court or the Government prior to trial of the fact that he had conversed with White in the county jail. He acknowledged the conversation for the first time at trial. The Trial Court was perplexed with respect to Paden's recantation, noting that Lemon and "those who were working for him were maneuvering around to keep people from testifying" and "there are some very peculiar situations have come up" to which Attorney Jarvis responded, "I would agree, Your Honor." Many other matters in this record reflect, we believe, that the Government was in fact surprised by Paden's recantation. The atmosphere was such that the Trial Judge was so troubled by the reluctance of witnesses Robinson and Paden upon direct examination by the Government that he observed that he intended to "investigate" the "very peculiar situations which had come up" and that "something happened to cause that." In ruling against the Motion for Judgment of Acquittal, the Judge observed:

> Now, the picture, as I see it, picking up the fragments of the evidence, would support a situation where Paden and McPherson have been gambling

with the Defendant and they got in debt to him . . . A couple of fellows get in debt to somebody they have got to get out . . . One way of looking at it, he (Lemon) got his money. These gambling debts were paid.

The Court made it abundantly clear in the instructions to the jury that the Government had been permitted to impeach Robinson and Paden only after they were shown to be recalcitrant and hostile, and that the statements attributed to them which they contradicted on the witness stand could not be considered as evidence in support of the charge against Lemon. Under all of the circumstances, if there was error it was harmless. We hold that the Trial Court properly allowed the impeachment of Robinson and Paden by the limited usage of the previous inconsistent statements.

## III.

Lemon contends that the Court erred in refusing to charge the jury as to the limited purpose for which existence of prior "uncharged misconduct" could be used. He argues that the Court should have instructed the jurors that the testimony, relating to his instructing White how to hot-wire a car and the formation of the "original conspiracy" from which he allegedly withdrew prior to the consummation of the burglary, was to be used only for the limited purpose of showing intent, knowledge, plan, or scheme, and not to be treated as direct evidence of his guilt.

At the outset we observe that the testimony concerning hot-wiring a car and the "original conspiracy" were both intermingled with the general narrative testimony of several witnesses, in such a manner that neither subject was treated improperly. We further observe that the Government witnesses were subject to detailed cross-examination by able defense counsel.

Although the Trial Court declined to use either of Lemon's detailed, lengthy,

proffered instructions on "mischarged conduct", he did charge the jury:

The Defendant is not on trial for any act or conduct not alleged in the indictment.

We are compelled to reiterate that jurors will be true to their oath and that they will conscientiously observe their duty. *Ellis, supra.* In view of the above partial instruction, we hold that the Court did not err in refusing to give Lemon's requested instruction. The Court had already adequately covered the area requested. Lowther v. United States, 455 F.2d 657 (10th Cir. 1972), cert. denied 409 U.S. 857, 93 S.Ct. 139, 34 L.Ed.2d 102 (1972).

 A conviction will not be disturbed on appeal where it is clear after a careful examination of the whole record that the alleged error did not deprive the accused of substantial rights. Woodring v. United States, 367 F.2d 968 (10th Cir. 1966); Wright v. United States, 301 F.2d 412 (10th Cir. 1962).

Affirmed.

HOLLOWAY, Circuit Judge (concurring):

I agree with the majority opinion in all respects, except as to the conclusion that the Government was surprised by the adverse testimony from Robinson and Paden. In that regard I have a different impression of the record, but agree that the disposition of the issue before us concerning impeachment of these two witnesses is proper.

With respect to the testimony of Robinson, there was a statement *before* he testified by an attorney appointed to advise him of his rights. In the presence of Government counsel the attorney stated to the trial court that his client had informed him that he made no statement concerning the defendant in this case. I feel this put the Government on notice before it called Robinson and that surprise during adverse testimony could not be claimed as is required for such impeachment.[1]

Again as to the testimony of Paden, I feel the record reveals notice to the Government that he would not testify in accord with his statement. Government counsel in fact referred to an FBI report of an interview two months before trial in which another witness stated that he understood Paden was going to change his story and say he committed the burglary, and that Lemon was not implicated. With this report before the Government prior to trial, I feel the requisite surprise during testimony is again disproved. In view of the statement by Government counsel showing notice of Paden's change of attitude, no claim of surprise could be made and Paden's subsequent demeanor on the stand was irrelevant as to surprise.

Nevertheless I join in the disposition on this issue. I am satisfied that any error in permitting the impeachment of Robinson was harmless. And I find no adequate objection to the impeachment procedure on Paden. There being no plain error affecting substantial rights, Rule 52(b), F.R.Crim.P., I agree that the challenge raised on appeal to the impeachment procedure should not be upheld.

---

1. It is not enough that during *trial* there is surprise—which is commonplace when one repudiates his earlier statements. The surprise must occur during *testimony* of the witness on the stand so that damage is inflicted by one's own witness, contrary to the reasonable expectations of the party calling him. See United States v. Coppola, 479 F.2d 1153, 1157–1158 (10th Cir.); United States v. Eaton, 485 F.2d 102, 105 (10th Cir.); and see Young v. United States, 97 F.2d 200, 205–206 (5th Cir.).