**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Walter L. JONES, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Calvin BAINES, Defendant-Appellant.**

**Nos. 74–1860, 74–1861.**

United States Court of Appeals,
Tenth Circuit.

July 27, 1976.

Rehearing Denied Sept. 27, 1976.

Lawrence E. Schauf, Asst. U.S. Atty., Denver, Colo. (E. Edward Johnson, U.S.

Atty., Wichita, Kan., on the brief), for plaintiff-appellee.

William E. Shull, Kansas City, Mo. (Duncan & Russell, Kansas City, Mo., on the brief), for defendants-appellants.

Before HOLLOWAY, McWILLIAMS and BARRETT, Circuit Judges.

HOLLOWAY, Circuit Judge.

Defendants-appellants Walter L. Jones and Calvin Baines were convicted as co-defendants for distributing a controlled substance in violation of 21 U.S.C.A. § 841(a)(1) and 18 U.S.C.A. § 2, and appeal. We find their contentions for reversal to be without merit and affirm.

Charges of distributions on three separate dates in January, 1974, are involved. Baines alone was charged and convicted on count I for a distribution of cocaine on January 3. Baines and Jones were jointly charged and convicted on count III for a distribution of heroin on January 22. Jones was charged alone in count II with distributing cocaine on January 4, but was acquitted of this charge.

Jones was sentenced to 15 years' imprisonment and a special parole term of three years on his conviction on count III. Baines was also sentenced to 15 years' imprisonment and a special parole term of three years on each of his convictions, these sentences being made to run concurrently.

The defendants both testified and denied any guilt of the offenses. They also presented witnesses who challenged the reputation and credibility of a government informer on which much of the prosecution's case depended.

The government's proof was made primarily by a Drug Enforcement Administration agent, by an informer, and a forensic chemist. The proof tended to show that the informer made a buy of cocaine capsules from Baines on January 3. The agent said he observed this transaction from a distance, monitored the conversation through a Kel transmitter and recorded the discussion. The tape recording of this transaction was admitted into evidence and played for the jury.

On January 4 the informer allegedly purchased cocaine from Jones. Jones, however, was acquitted on this charge and we need not discuss the details concerning it.

The government proof also tended to show a heroin transaction on January 22. This transaction was also observed by the DEA agent, monitored through a Kel transmitter and recorded. Again the tape was admitted into evidence and played before the jury. The evidence tended to show that Baines asked the informer how many he wanted and that the informer requested the usual amount. Jones was not present at this time. Jones later appeared at another location where Baines and the informer were sitting in Baines's car. The testimony of the DEA agent placed Jones at the scene. The agent testified that it appeared that Jones was passing something in the window of Baines's car. According to the informer, Jones passed eight capsules of heroin to Baines and Baines handed them to the informer.

The chemist testified that the capsules involved in the two transactions respectively contained cocaine and heroin. The capsules identified were admitted in evidence.

The defendants argue four propositions on appeal:[1] (1) that 21 U.S.C.A. § 841 is unconstitutionally vague by not specifying the maximum special parole term which may be imposed, and is also an invalid delegation of legislative power; (2) that the court erred in admitting the tape recordings because they were inaudible, susceptible to misinterpretation and highly prejudicial, and because the government was unable to provide transcripts of the recordings; (3) that the court erred in admitting one particular tape containing statements by Baines which were hearsay and prejudicial as to Jones, who was not present when the statements were made; and (4) that the court exceeded the bounds of fundamental fairness and fair comment by statements

---

1. One additional issue concerning the jury instructions was withdrawn at argument.

made concerning the case and to defense counsel.

## I

### *The constitutionality of the special parole term provisions in 18 U.S.C.A. § 841(b)(1)*

Defendants argue essentially that the special parole term provision is invalid due to the lack of any statutory maximum on the length of the special parole term which must be imposed under § 841(b)(1)(A). They point out that if a violation of the terms of the mandatory special parole occurs, the special parole may be revoked and the original term of imprisonment must then be increased by the period of the special parole term, the resulting new term of imprisonment not being diminished by the time spent on special parole. See § 841(c). Defendants say the statute is both unconstitutionally vague and an invalid delegation of legislative power, citing Article 1, Section 1 of the Constitution and *United States v. Cardiff*, 344 U.S. 174, 73 S.Ct. 189, 97 L.Ed. 200; and *Roberts v. United States*, 491 F.2d 1236, 1238 (3d Cir.), and similar cases.

It is true that 21 U.S.C.A. § 841(b)(1)(A) makes a special parole term for the controlled substance offenses mandatory, specifying only required minimums for the special parole term and leaving its maximum length to the court's discretion. § 841(b)(1)(A) provides in part:

. . . Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a special parole term of at least 3 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a special parole

term of at least 6 years in addition to such term of imprisonment.

Moreover, a violation of the conditions of the special parole term may bring revocation and a new term of imprisonment, as § 841(c) makes clear.[2]

■ We are, however, unpersuaded by the defendants' contentions. While § 841 (b)(1)(A) provides only the three and six years minimums, the statute is reasonably construed to validly authorize a maximum special parole term of life. *United States v. Rich*, 518 F.2d 980, 987 (8th Cir.); see *Binkley v. Hunter*, 170 F.2d 848, 849–50 (10th Cir.), cert. denied, 336 U.S. 926, 69 S.Ct. 645, 93 L.Ed. 1087; cf. *Bailey v. United States*, 74 F.2d 451, 452–53 (10th Cir.). Leaving the determination of maximum sentences to the court is not uncommon, see *Binkley v. Hunter*, supra at 849, and we are convinced that no unlawful delegation of legislative power is involved. Nor is the statute void for vagueness because of the broad range of the sentencing power. Id. at 849; *Bailey v. United States*, supra at 452.

■ Relying on *Roberts v. United States*, 491 F.2d 1236, 1238 (3d Cir.), defendants argue that because of the undetermined period of the special parole term to be imposed, a defendant would lack the knowledge and understanding of one of the most crucial elements to be considered in plea bargaining or waiving one's right to a trial (Appellants' Brief, 9–10). We agree that, as the *Roberts* case recognizes, the possible life extent of such a special parole term is a consequence of a plea of guilty which must be made clear in addressing a defendant before accepting a plea of guilty pursuant to Rule 11, F.R.Crim.P. See *Jenkins v. United States*, 420 F.2d 433 (10th Cir.). These problems are not involved here, how-

**2.** 21 U.S.C.A. § 841(c) provides:

Special parole term

(c) A special parole term imposed under this section or section 845 of this title may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not

be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment. A special parole term provided for in this section or section 845 of this title shall be in addition to, and not in lieu of, any other parole provided for by law.

ever, because the defendants entered no such plea and instead exercised their rights to a trial by jury.

We hold that the special parole term provisions of § 841 are valid.

## II

### *The admission into evidence of the tape recordings*

As noted above, the surreptitious tape recordings of the drug transactions were admitted in evidence and played for the jury over the defendants' objections. Those which we need be concerned with on this issue are Exhibit 4–A, the recording concerning the January 3 cocaine charge in count I against Baines, and Exhibit 14–A, the recording concerning the January 22 heroin charge against both defendants.

Essentially the defendants contend that the tapes were inaudible, susceptible to misinterpretation and highly prejudicial. They argue that the trial court abused its discretion by admitting the tape recordings in evidence. In addition, the defendants complain that the manner in which the tapes were played before the jury was extremely prejudicial and inflammatory because the informer was permitted to testify on the contents of the unclear tapes as they were being played (Appellants' Brief, 22). Thus they argue that the informer improperly corroborated his own testimony by relating to the jury the contents of the tapes, although the alleged corroboration came from virtually undecipherable sources. Id. And the defendants complain because the government was unable to provide a transcript of the tapes.

We must agree there are problems concerning the tapes. The record on appeal itself is unsatisfactory. As to the portion of Ex. 4–A on the January 3 transaction (count I) which was played, there is no record showing in any manner what was played. At that point the reporter made a notation that "a portion of Exhibit 4–A is played which is not sufficiently clear for the reporter to be able to report the voices." (R.Vol. 1, 270). Thereafter, at points in the record where portions of the recordings were played, there are simply notations that further portions of the tapes were played.

There is, therefore, support from the court reporter for the contention on the unintelligibility of the tapes. Moreover, the government admitted at pretrial that the recordings were incoherent in part. It admitted also that transcripts which had been made of the recordings were perhaps inaccurate, and that they were incomplete. Hence the government said it would make no use whatsoever of the transcripts at trial (R.Vol. 1, 25).

In view of the state of the record we have had to assume that the tapes marked as Exhibits 4–A (count I) and 14–A (count III) were played in their entirety at the trial, and we are taking into account all portions of these two tapes.[3] We conclude on the record as a whole that no prejudicial error is shown in connection with use of the tapes.

The tape concerning count I and the January 3 transaction is unintelligible in many parts. However, on one segment counting may be heard—"20  .  .  .  40  .  .  .  60  .  .  .  80," and shortly thereafter "2 .  .  .  4  .  .  6  .  .  .  8." The informer testified that he and Baines were counting the money by 20's and that he (the informer) counted the pills (R.Vol. I, 273–

---

3. On appeal these two tapes have been played in full so as to take into account both the claim of their inadequacy for courtroom use, and the claim of prejudice from testimony given when they were played before the jury.

To avoid danger of reversal for an inadequate record and possible prejudice, some means should be used to identify clearly those portions of the tapes played at trial. These tapes, or transcribed portions of them, should be in-
cluded in the record on appeal. In the trial court's discretion the use of tapes may be conditioned on advance preparation of an accurate transcript, see *United States v. Gerry*, 515 F.2d 130, 143–44 (2d Cir.), cert. denied, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 and such a transcript would be useful as a reference tool to permit clear identification of portions of the tapes played before the jury.

74). This part of the discussion was not corroborated by the DEA agent's testimony relating what he heard simultaneously over the transmitter. However, there was substantial corroboration about this transaction from the DEA agent. He testified he saw Baines at the scene; he saw him get into the informer's car; and he heard, over the transmitter a remark by Baines expressing fear that they were being watched (R.Vol. I, 45–46). The agent also testified that the informer was searched before the transaction and had no capsules and that on his return he had eight capsules.

Exhibit 14–A, the tape concerning the transaction on January 22, is also unintelligible in many parts and fails to show specific comments by identifiable persons who are tied into the incident. However, again there was substantial corroboration by the DEA agent that both defendants were at the scene; that Jones passed something through the window of Baines's car; and that the informer again brought back the capsules, having been searched before the incident.

■■■ Where a tape recording is objected to as unintelligible or inaudible its admissibility is within the sound discretion of the trial judge. *United States v. Hodges*, 480 F.2d 229, 233–34 (10th Cir.). Unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy, it may be admitted; this is especially so where a witness who heard the statements also testifies and the recording gives independent support to his testimony. *Monroe v. United States*, 98 U.S.App.D.C. 228, 234 F.2d 49, 55, cert. denied, 352 U.S. 873, 77 S.Ct. 94, 1 L.Ed.2d 76.

4. There was a statement by a voice, said to have been that of Baines, asking "what do you want," and the reply "you know what I buy," followed by the response "eight."

5. We have noted in playing this part of the tape, Exhibit 14–A, that there are indirect references to Jones which the jury may have picked up. There are references to "Fatboy" and to calling him to get the drugs ready. This nickname was one which the informer testified that he sometimes used in referring to Jones (R.Vol. 1, 260).

On Exhibit 4–A there was the portion on counting of the money that was clear and incriminating. As to Exhibit 14–A, we must agree there was a bare minimum of possibly incriminating statements.[4] The remainder, however, was simply not useful and for this reason was not prejudicial to the defendants. In the circumstances, and particularly in view of the corroborating testimony by the DEA agent, we cannot say there was an abuse of discretion in permitting use of the tapes. *United States v. Hodges*, supra, 480 F.2d at 233–34.

### III

### *Defendant Jones's objections to the January 22 tape*

Defendant Jones made an additional objection to the January 22 tape which is pressed again on appeal.

The tape concerning the January 22 transaction, Exhibit 14–A, contains exchanges of conversation at two locations. It is explained by the informer that he and Baines are heard talking at a service station while working on Baines's car; that Baines asks him (the informer) "what" he wanted and the informer replied "you know what I buy." At this time Jones was not present and Baines made no reference to Jones during this entire conversation.[5]

■■■ Jones argues that the acts and declarations of his co-defendant Baines in the first encounter were hearsay as to him and not admissible against him, there being no conspiracy, relying on *United States v. Lemon*, 497 F.2d 854 (10th Cir.) and *Mares v. United States*, 383 F.2d 805 (10th Cir.).[6]

However, no complaint is made that these remarks identified Jones, and Jones's position on appeal is that no reference was made to him in this conversation. See note 7, infra. In the circumstances we feel we need not consider whether there is any evidentiary problem on this point.

6. We have said that although no conspiracy is charged, the acts and declarations of one co-defendant are admissible against the other if the existence of a conspiracy is in fact shown by independent evidence, and if the acts and declarations were during and in furtherance of the

Jones says that in those discussions there was no mention of him, or of any necessity to contact him; that there was no other evidence that would connect him with the alleged transaction; and that the admission of such statements was highly prejudicial to him. He contends that there was no independent evidence of a conspiracy between him and Baines to sell drugs and thus admission of proof of the co-defendant's statements and acts in the first encounter was error and highly prejudicial (Appellants' Brief, 24–26).

■■■■ The government argues that this first portion of the tape objected to by Jones could not have been prejudicial to him. But regardless of whether the first portion of the tape may have in some way hurt Jones,[7] he was clearly incriminated by overwhelming proof concerning the second part of the transaction when the drugs were delivered—the testimony of the DEA agent placing Jones at the car, and the proof from the informer who brought back the heroin capsules. We conclude that any error in admission of the first portion of the tape over the hearsay objection was harmless, being sure in our conviction that it did not influence the jury, or that it had but very slight effect as to Jones. *Kotteakos v. United States*, 328 U.S. 750, 764, 66 S.Ct. 1239, 90 L.Ed. 1557.[8]

## IV

*The claim of prejudicial comments by the trial judge*

■■■■ Defendants argue that the trial court erred and exceeded the bounds of fundamental fairness and fair comment by its comments on the case and to defendants' counsel to such an extent as to prejudice both defendants and to require a new trial. They complain of one particular incident during cross-examination and impeachment of the informer and of several other incidents. They say that the effect of that incident and of all the incidents together was to prejudice them and to require a new trial.

We have examined all the portions of the record complained of and cannot agree that the court's comments prejudiced them so as to require a new trial. We find that no grounds for reversal are demonstrated and the judgments are affirmed.

AFFIRMED.

---

· conspiracy. See *United States v. Lemon*, 497 F.2d 854, 857 (10th Cir.). As noted below, this theory is not relied on by the government for admissibility of the portion of the tape covering the first discussion on January 22.

7. In connection with the first conversation on the tape, defendants' brief states that it is indicative that Baines had some type of a continuing relationship with the informer in that he specifically knew the amount of drugs that the informer generally purchased. As to Jones, defendants' brief states that "[a]t no time was there any mention of appellant Jones, or any necessity to contact him, or any other evidence that would connect appellant Jones with the alleged transaction." (Appellants' Brief, 25). However, see note 5, supra.

8. The argument made is based solely on hearsay grounds and no constitutional claim is made of a denial of confrontation. We feel there is no confrontation problem because Baines testified and was available for cross-examination by Jones, although the right was not exercised, and because Baines's testimony denied any transactions in heroin, making a common defense with Jones. *Nelson v. O'Neil*, 402 U.S. 622, 629–30, 91 S.Ct. 1723, 29 L.Ed.2d 222. This, of course, does not dispose of the problem that the out of court statement is hearsay under federal law. See id. at 627; *Dennis v. United States*, 302 F.2d 5, 10 (10th Cir.); Rule 801(c), F.R.Evid.