915 F.2d 1573
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Calvin Leroy BROOKS, Defendant-Appellant, and
Harold Hunter, Defendant-Appellant
 Nos. 90-5060, 90-5061.
 United States Court of Appeals, Sixth Circuit.
 Oct. 10, 1990.
 
 Before BOYCE F. MARTIN, Jr. and WELLFORD, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 In this consolidated appeal, defendant-appellants (Appellants) challenge their convictions for conspiracy to possess and attempt to possess cocaine with intent to distribute. 21 U.S.C. Secs. 846, 841(a)(1)(1988). Appellant Brooks further appeals his conviction for knowingly and intentionally using a communication facility to facilitate the conspiracy. 21 U.S.C. Sec. 843(b)(1988). We have reviewed the merits of Appellants' claims, and for the reasons set forth below, we now AFFIRM.
 
 I.
 
 2
 On March 15, 1989, officers of the Chattanooga Police Department arrested Appellant Brooks for possession of approximately one pound of cocaine hydrochloride. Pursuant to a later search of Brooks' residence, police discovered two bottles of a cocaine cutting agent, ground to air radios, aerial maps of Florida and the Bahamas, and other materials customarily associated with small aircraft navigation.
 
 
 3
 Following a bench trial on June 8, 1989, the United States District Court for the Eastern District of Tennessee convicted Brooks[1] and scheduled sentencing for August 14, 1989. During the nine weeks prior to sentencing, Brooks was released on bond and during that time undertook the transactions giving rise to the instant appeal.
 
 
 4
 While Brooks was out on bond, he and Appellant Hunter entered into another cocaine deal. On July 19, 1989, Appellants met with their friend and acquaintance, Lynwood Ridley and discussed the possibility of obtaining the cocaine from him.
 
 
 5
 The next day, Ridley contacted Tennessee Bureau of Investigation (TBI) Special Agent Joe Copeland. Ridley informed Copeland about Brooks' arrangements for the purchase of the cocaine and thereafter assisted law enforcement officers in connection with this pending transaction. Ridley next spoke with Brooks by telephone concerning the pending purchase.
 
 
 6
 Initially, Ridley and Brooks arranged to meet at a location in Marion County, Tennessee to discuss the transaction further; however, this meeting never took place because Brooks went to the wrong location. Ridley was informed the next day that Brooks was in a Chattanooga, Tennessee hospital.
 
 
 7
 At the behest of law enforcement officers, Ridley went to the hospital and met with Brooks. During this meeting, Ridley wore an electronic transmitter which permitted the TBI agents to monitor and record the conversations with the Appellant. Following this meeting, Appellant directed Ridley to meet him at a nearby Chattanooga restaurant. As instructed, Ridley went to the restaurant where he met and ate lunch with Brooks and Cindy Tudor, Brooks' girlfriend. Although Ridley was again wearing a transmitter, agents were able to hear and record only intermittent portions of the conversations inside the restaurant because of the heavy background noise.
 
 
 8
 After their meal, Appellant, Tudor, and Ridley left the restaurant. While Tudor waited in Brooks' car, Brooks and Ridley continued to walk and discussed the deal. This discussion concerned the four kilogram amount of cocaine, the price per kilogram, and other details of the transaction. Agents were able to monitor and record this discussion and heard Appellant explain that another individual would assist him in the transaction. Also during this conversation, Appellant Brooks made a statement in which he expressed his belief that it was justifiable to murder individuals who cooperated with the police.
 
 
 9
 Subsequent to this conversation, Appellant and Ridley spoke several times by telephone while Brooks was in Georgia and Ridley was in Tennessee. Through these conversations, Appellant and Ridley finally agreed to conduct the transaction in the parking lot of the Quick Stop Market in Ringgold, Georgia.
 
 
 10
 On the scheduled day, agents outfitted Ridley with a transmitter, took him to the appointed meeting place, and then set up surveillance in the area. Agents shortly thereafter observed Brooks arrive in the area. Appellant Hunter followed Brooks in a separate vehicle. While Hunter parked in the Quick Stop parking lot, Brooks continued on to the designated meeting place. There, he picked up Ridley, and the two men drove back to meet Hunter.
 
 
 11
 Agents recorded the conversation as Hunter told Ridley that he had $68,000 in $1,000 and $2,000 bundles and that he would not go to Tennessee to conduct the purchase because he was concerned about going to jail. After Ridley counted the money, Agents moved in and arrested Appellants.
 
 
 12
 At trial, the district judge permitted the government to introduce parts of a composite tape which contained the recordings made of Lynwood Ridley's conversations with Appellant Brooks at the hospital, inside the restaurant, and outside the restaurant and with both Appellants Brooks and Hunter in the Quick Stop parking lot in Ringgold, Georgia. The government introduced into evidence only the third and fourth conversations from this tape.
 
 
 13
 As an aid in evaluating the tapes, the district judge permitted the jurors to use transcripts prepared by the government contemporaneously with their hearing of the portions of the tape in question. The court did not, however, permit the transcripts to be introduced in evidence, and the jury did not have access to them during its deliberations.
 
 
 14
 On this appeal, Appellants jointly present three evidentiary challenges to their convictions. Specifically, they contest the district court's admission of the tapes and its use of the transcripts; the admission of Appellant Brooks' statement on the tape concerning the murder of police collaborators; and the admission of certain testimonial evidence of their prior bad acts. Appellant Hunter also raises a constitutional challenge, asserting that the prosecutor violated his rights under the Fifth and Fourteenth Amendments to the United States Constitution when he inquired into the Appellant's post-arrest silence during his cross-examination of Hunter. Finally, Appellant Hunter asserts that the district court erred in its finding that he willfully impeded or obstructed justice by his testimony, thereafter adjusting his sentence upward by two levels pursuant to section 3C1.1 of the United States Sentencing Commission Guidelines. We shall consider each of these issues in order.
 
 II.
 EVIDENTIARY ISSUES
 
 15
 A. Admission of the Tape Recording and Use of the Transcripts
 
 
 16
 Appellants argue that the district court abused its discretion by admitting two of the four conversations contained on government exhibit 3, the composite tape. The particular conversations in question are those which occurred outside the Chattanooga restaurant and in Ringgold, Georgia. Appellants contend that these recordings were of such poor quality that the court should not have admitted them in evidence.
 
 
 17
 The district court listened to the contested recordings and issued an order in which it found "that with one notable exception, the tape recordings [were] audible enough to make sense to the listener and for a juror to determine whether or not the tape is at variance with the transcripts." Memorandum and Order of October 19, 1989; JA 49. The exception noted by the court was a portion of the Ringgold, Georgia conversation which was rendered inaudible by radio interference. The court excluded this portion of the recording.
 
 
 18
 Settled law in this circuit directs that the abuse of discretion standard guide appellate review of a district court's decision to admit tape recordings. See U.S. v. Scaife, 749 F.2d 338 (6th Cir.1984); U.S. v. Enright, 579 F.2d 980 (6th Cir.1978). Generally, tape recordings are admissible "unless the incomprehensible portions of the tapes are so substantial as to render the recordings as a whole untrustworthy." U.S. v. Robinson, 763 F.2d 778, 781 (6th Cir.1985).
 
 
 19
 In the instant case, the government acknowledges that the recordings contain some inaudible portions, but it contends that this is an unavoidable consequence of extraneous interference and background noise common in undercover tape recordings. While we note that such commonplace interference might render a recording inadmissible in some instances--indeed the district court excluded a portion of the Ringgold conversation for this very reason[2]--we also observe that the district court heard testimony from several corroborative witnesses concerning the substance of the recorded discussions.
 
 
 20
 Our brethren in the tenth circuit have commented that the general rule of admissibility of tape recordings is particularly strong "where a witness who heard the statements also testifies and the recording gives independent support to this testimony." U.S. v. Brinklow, 560 F.2d 1008, 1011 (10th Cir.1977). In the case before us, the district court heard testimony concerning the conversations in question from Lynwood Ridley, one of the participants to the conversations. Additionally, Drug Enforcement Administration (DEA) Special Agent Kelly Goodowens testified that he was monitoring the transmitter worn by Ridley and was able to hear the conversations in question. Finally, TBI Special Agent Copeland also testified that he monitored the conversations and described them in his testimony. Thus, the tapes did not provide the sole evidence concerning the conversations, but merely supplemented the testimony of witnesses with firsthand knowledge of the discussions.
 
 
 21
 Although they contest neither the accuracy of, nor the foundation for the use of the transcripts, Appellants further contend that the district court erred by permitting the jury to utilize transcripts of the conversations while the tapes were being played.
 
 
 22
 This court has long recognized the widely held rule that "[t]he use of transcripts is ... a matter commended to the trial court's discretion." U.S. v. Robinson, 707 F.2d 872, 876 (6th Cir.1983); see also U.S. v. Panas, 738 F.2d 278 (8th Cir.1984) (affirming use of transcript to assist jury in identifying speakers in conversations); U.S. v. Slade, 627 F.2d 293, 302 (D.C.Cir.), cert. denied, 449 U.S. 1034 (1980) ("It is within the trial court's discretion to allow the jury to use an accurate transcript to 'assist them in listening to [a] tape.' ... The need for a transcript tends to arise where, as here, portions of a tape were relatively inaudible and the identity of the speakers was not automatically clear to a listener.").
 
 
 23
 Here, the district court did not admit the transcripts into evidence and cautioned the jury to use them only as a guide. The district judge specifically admonished the jurors "that if there is any difference between what you hear on the tapes and what you read on the transcripts, then you should be governed by what you hear on the tapes, and not by what you read in the transcript." Jury Trial, TR at 37 and 274. Thus presented with transcripts of uncontested accuracy, and giving the appropriate cautionary instruction, the district court did not abuse its discretion by permitting the jury to use the transcripts as a guide.
 
 B. Admission of Brooks' Statement
 
 24
 As noted in the foregoing section, the district court admitted into evidence the tape recording of the conversation between Lynwood Ridley and Appellant Brooks which occurred outside the Chattanooga restaurant. During this conversation, Appellant Brooks made a statement to Ridley expressing his belief that it was justifiable to murder individuals who were cooperating with police. Appellants assert that the district court erred in admitting this statement, arguing its prejudicial impact outweighed its probative value.
 
 
 25
 During the pre-trial stage, the district court made a preliminary ruling to exclude this statement; however, the court left open the possibility to reconsider its ruling and permit the government to introduce the statement if it became relevant. During the course of the trial, Appellants raised a surprise defense. They asserted they were not guilty because they were secretly working in an undercover capacity on their own to attempt to apprehend a drug dealer. Essentially, Appellants claimed they were doing undercover work on Ridley.
 
 
 26
 Rule 403 of the Federal Rules of Evidence permits the district court to exclude even relevant evidence where the danger of unfair prejudice substantially outweighs its probative value. Fed.R.Evid. 403; see also U.S. v. Pollard, 778 F.2d 1177 (6th Cir.1985); U.S. v. Hans, 684 F.2d 343 (6th Cir.1982).
 
 
 27
 Viewed in the light most favorable to its proponent the government, the evidence in question appears highly probative to disprove Appellants' asserted defense. If Brooks believed Ridley was a "snitch," then his statement concerning the murder of snitches makes it less likely that he was actually working undercover.
 
 
 28
 Appellants argue to the contrary, that the statement is wholly consistent with their defense. That is, if Brooks was attempting to perpetrate a "sting" on Ridley, then his statement was merely an effort to assure Ridley that he, himself, was not a snitch. However, Appellants' argument proves too much. By showing the statement to be consistent with their defense, Appellants undermine any likelihood that they suffered any unfair prejudice by its admission. Consequently, we find no error in the district judge's decision to admit the statement.
 
 
 29
 C. Ridley's Testimony Concerning Appellant's Prior Bad Acts
 
 
 30
 Appellant Hunter contends that the district court erred by permitting Ridley to testify about Hunter's previous narcotics trafficking. Appellant Brooks likewise challenges this testimony asserting that it served to reinforce for the jury the likelihood that a conspiracy existed.
 
 
 31
 Ridley testified that he met Brooks and Hunter at a house in Summerville, Georgia, two years prior to the events in question. Ridley further testified that he observed both of the Appellants use cocaine and discuss the sale of cocaine. At trial, the Appellants objected to this testimony. The court excused the jury and listened to the testimony, ruling it admissible.
 
 
 32
 Rule 404(b) of the Federal Rules of Evidence permits the admission of evidence of prior bad acts, not to prove conduct in conformity therewith, but to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Fed.R.Evid. 404(b). The rule is one of inclusion rather than exclusion, and is neither exhaustive nor conclusive. See U.S. v. Acosta-Cazares, 878 F.2d 945 (6th Cir.), cert. denied, 110 S.Ct. 255 (1989). Moreover, the abuse of discretion standard governs these rulings. Id.
 
 
 33
 Here, the government did not offer the evidence to show the Appellants' criminal propensities, but rather to demonstrate the context of the case and the relationship of the parties. Surely the Appellants must have known Ridley to openly discuss the sale of four kilograms of cocaine. Moreover, the evidence is also relevant to the Appellants' asserted defense that they were working undercover and is likewise probative of the element of intent. We find no abuse of discretion in the district court's ruling.
 
 III.
 
 34
 PROSECUTORIAL INQUIRY CONCERNING DEFENDANT'S POST-ARREST
 
 SILENCE
 
 35
 During the course of the trial, Appellant Hunter testified on his own behalf. In his direct testimony before the jury, Hunter explained why he had not informed the police at the time of his arrest that he was not a cocaine dealer but, rather, was working undercover. Essentially, he explained that the police had never asked him about it. On cross-examination, the prosecutor asked Hunter whether the police had prevented him from explaining these facts. He admitted that they had not.
 
 
 36
 In Doyle v. Ohio, 426 U.S. 610 (1976), the United States Supreme Court held that this type of comment upon an accused individual's post-arrest silence clearly violated the Fifth and Fourteenth Amendments. Appellant Hunter asserts this Fifth Amendment claim on appeal despite the fact that he did not object to this line of questioning at trial.
 
 
 37
 It is well-settled that failure to raise an objection precludes appellate review, unless the admission of the objectionable material constituted "plain error." U.S. v. Young, 470 U.S. 1 (1985); see also U.S. v. Cardinal, 782 F.2d 34 (6th Cir.), cert. denied, 476 U.S. 1161 (1986). Moreover, the Plain Error Doctrine is only to be used in situations where a "miscarriage of justice would otherwise result." Young, 470 U.S. at 15. The instant appeal does not present such a case.
 
 
 38
 In United States v. Robinson, 485 U.S. 25 (1988), the United States Supreme Court addressed a situation similar to the one presented. In Robinson, the Court drew a contrast between invited and uninvited comments, noting that the doctrine is a shield, not a sword to be used by the defense. Id. at 32 (quoting U.S. v. Hasting, 461 U.S. 499, 515 (1983) (Stevens, J., concurring)).
 
 
 39
 On the record presented, we find that Appellant Hunter's counsel opened the door to the prosecutor's inquiry by asking Hunter whether or not the police had inquired as to Hunter's motive or purpose for participating in the drug transaction. Thus, where defense counsel invited the inquiry on direct examination, we can find no plain error in the prosecutor's acceptance of the invitation.
 
 IV.
 
 40
 INCREASE OF SENTENCE FOR OBSTRUCTION OF JUSTICE
 
 
 41
 The Sentencing Guidelines provide that an increase of the offense level by two levels is appropriate if the defendant willfully impeded or attempted to impede the administration of justice. U.S.S.G. Sec. 3C1.1. The comment to section 3C1.1 makes evident that false testimony on a material fact at trial warrants the adjustment. U.S.S.G. Sec. 3C1.1, Comment.
 
 
 42
 The district court found that the Appellants' defense that they were working undercover to be a "cooked-up story that had absolutely and utterly no basis in fact" and that Hunter's testimony in this regard was "false, misleading and was calculated to be so." Consequently, the judge ruled that Hunter's testimony was a deliberate attempt to obstruct justice. Based upon this finding, the judge adjusted the sentence.
 
 
 43
 This court will not disturb factual findings by the district court unless they are clearly erroneous. U.S. v. Barrett, 890 F.2d 855 (6th Cir.1989). Based upon our review of the record, we cannot say the court's finding in this instance was clearly erroneous. The Appellants offered no other evidence at trial to suort their defense theory. Consequently, we find no error in the two-level sentence increase imposed by the district judge.[3]
 
 V.
 
 44
 Accordingly, for the foregoing reasons, we AFFIRM the district court's judgment and sentence in all respects.
 
 
 
 [1]
 Brooks separately appealed this conviction in case number 89-6283. This panel received the case on briefs and will issue its decision in a separate opinion
 
 
 [2]
 We find no abuse of discretion in the district court's treatment of the partially inaudible portion of the Ringgold, Georgia recording. As one leading scholar in this area of law has observed:
 Partial inaudibility goes to weight and not admissibility. As one court has noted, questions about the admissibility of a particularly inaudible recording can be analogized to the introduction of a writing: "A writing would not be rendered inadmissible just because some of the words were illegible ... Neither should a tape be rendered inadmissible merely because it is partially inaudible."
 J. Carr, The Law of Electronic Surveillance, Sec. 7.5(d), at 7-87 through 7-88 (2d ed. 1990) (footnotes omitted); see also United States v. Vega, 860 F.2d 779, 790-91 (7th Cir.1988) (inaudibility goes to the weight rather than to the admissibility of the tapes).
 
 
 [3]
 At oral argument, Appellant Hunter asserted the view that a virtual per se rule is developing in the Eastern District of Tennessee to invoke the two-level adjustment whenever a defendant testifies in his own behalf and is subsequently found guilty. Counsel for the United States contested this assertion. At this time, there is nothing in the record before us advancing this claim; therefore, we need not and do not comment upon this assertion except to restate our view that the discretionary authority section 3C1.1 provides district judges to increase the sentencing level may well be in order to address instances of deliberate perjury by defendants on a case-by-case basis. If such a per se application is indeed emerging, the matter should first be addressed to the judges of the Eastern District for their consideration and action