**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jerry F. BRINKLOW,**
**Defendant-Appellant.**

No. 76–1586.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted May 17, 1977.

Decided Aug. 29, 1977.

C. Scott Crabtree, Asst. U.S. Atty., Denver, Colo. (James L. Treece, U.S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

Jay Louis Gueck, Denver, Colo. (Morrato, Gueck & Colantuno, Denver, Colo., on the brief), for defendant-appellant.

Before HOLLOWAY and BARRETT, Circuit Judges, and BOHANON, Senior District Judge.*

BOHANON, Senior District Judge.

Jerry F. Brinklow (Brinklow), appellant, was convicted of obstructing justice in violation of 18 U.S.C. § 1503, which provides in part:

"Whoever . . . corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice . . . [shall be guilty of violating the laws of the United States]"

Two appeal issues exist:

1. Was the evidence sufficient to sustain the conviction?

2. Did the trial court err in admitting into evidence certain tape recorded conversations?

## I.

In reviewing a conviction and the sufficiency of the evidence, an appellate court must view the evidence, and all reasonable inferences that may be drawn therefrom, in the light most favorable to the prosecution, in determining whether the record discloses substantial evidence supportive of the jury's conclusion that appellant's guilt was established beyond a reasonable doubt. *United States v. Crocker*, 510 F.2d 1129 (10th Cir. 1975); *United States v. Downen*, 496 F.2d 314 (10th Cir. 1974), *cert. denied* 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 142 (1974); *United States v. Yates*, 470 F.2d 968 (10th Cir. 1972). From this perspective we shall summarize the facts in the instant case.

While incarcerated on charges unrelated to this case, Brinklow agreed to assist one Peter Schamber (Schamber), also incarcerated, in obtaining bond, in return for Schamber arranging to kill Phillip Hermanson (Hermanson), an eye witness to the offense for which appellant was at that time awaiting trial. Brinklow approached Schamber with the scheme after learning that Schamber was awaiting trial on the charge of conspiracy to commit murder.

* Of the Western District of Oklahoma, sitting by designation.

Subsequent to making bail himself, Brinklow committed his own home on a property bond in order to free Schamber. On the basis of this pledge and certain contributions by Schamber's relatives, Schamber was released on a $25,000 bond.

Thereafter Schamber communicated with the Colorado Bureau of Investigation and was introduced to undercover agent Kenneth Brown (Brown). With Brown posing as a "freelance hit-man from Detroit," Brinklow, Schamber and Brown met on two separate occasions, and unknown to Brinklow their discussions were electronically recorded, wherein it was agreed that Brown was to prevent Hermanson from testifying against Brinklow. During both meetings Brinklow presented Brown with hand guns intended to be used in silencing Hermanson.

Subsequent to the second meeting Brinklow was telephoned by Brown, who claimed to have killed both Hermanson and his wife. Schamber and Brinklow later met, and Brinklow inquired as to where the two were buried so that he could exhume and defile the bodies.

Statements made during these meetings, admitted to by Brinklow on cross-examination and corroborated by the tapes, included assertions by Brinklow that he didn't want Hermanson to show up in court, that somebody should talk with Hermanson and encourage him not to testify, that he didn't want Hermanson around, period, that he didn't care if Hermanson came up dead, and that he would like to take a pistol to Hermanson's head and shoot him himself. Schamber testified that Brinklow was most explicit on other occasions about his desire to have Hermanson killed but that he was intentionally somewhat vague during these particular meetings due to his mistrust of Brown and his concern that the three men might be under electronic surveillance.

During these same meetings, Brown expressed on numerous occasions his intention to kill Hermanson per his agreement with Brinklow, to which expressions Brinklow never took exception or dissented. Additionally, Brinklow stated that he would rather be on trial for murder than for the bombing charges on which Hermanson was to testify. When questioned by Brown at one point as to whether he desired to terminate the murder plot, Brinklow indicated that he did not. Brinklow, in turn, questioned Brown as to whether there would be any trace of the body subsequent to the killings, and Brown assured him there would not be.

Agent Brown testified Brinklow requested that Hermanson be killed by a specific date and that no ammunition casings be left at the murder scene, which might be traceable back to Brinklow, who was furnishing the weapons. Brown also testified that Brinklow expressed some mistrust of him, that consequently Brinklow would not actually employ the word "kill" in Brown's presence, but that in response to an inquiry as to whether he wanted Hermanson killed he nodded his head affirmatively. Brown further testified that Brinklow expressed a desire to avoid making any explicitly incriminating statements, but that he pointed toward Schamber and commented that Schamber understood what was to occur and knew what Brinklow wanted, and that nothing more needed to be said about the matter.

Brinklow commented to Brown that certain weapons were too noisy, and Brown suggested that a .22 caliber pistol should be utilized. Brinklow furnished him several weapons, with Brown promising to return all except the one actually employed in the killing.

Brinklow testified on his own behalf, explaining that he believed Brown to be a "hit-man" and that he was intimidated by his fear of Brown into pretending to acquiesce to the scheme; also, that at the last meeting, which was not taped, he expressed a desire that Hermanson not be killed.

■ It is the province of the jury, rather than of the appellate court, to weigh the credibility of witnesses and to judge conflicting testimony. *United States v. Harris*, 534 F.2d 207, 214 (10th Cir. 1975); *United States v. Buck*, 449 F.2d 262 (10th Cir. 1971).

Whether Brinklow actually desired or intended that Hermanson be killed is peripheral to the offense charged. The government presented substantial evidence, endorsed by the jury, that Brinklow endeavored to obstruct justice by in some manner preventing Hermanson from testifying.

## II.

Defendant takes exception to the trial court's admission of tapes made of conversations between Brinklow, Schamber and Brown. We find no error in their admission.

· The trial court appropriately reviewed the tapes *in camera* previous to their admission in evidence, and also required that an appropriate foundation be established as to the authenticity of the recordings. The trial court is in a unique position to consider whether the foundation upon which the recording is being admitted insures the authenticity of the recording. *United States v. Swane*, unpublished opinion filed December 18, 1975, No. 75–1387.

It is well settled that a recording is admissible unless the inaudible portions are so substantial as to render untrustworthy the recording as a whole; this is especially so where a witness who heard the statements also testifies and the recording gives independent support to this testimony. *United States v. Jones*, 540 F.2d 465, 470 (10th Cir. 1976). Such determinations of admissibility have repeatedly been held to be within the purview of the sound discretion of the trial judge. *United States v. Hodges*, 480 F.2d 229 (10th Cir. 1973). We find no abuse of trial court discretion.

AFFIRMED.