**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 16 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KEN DOMANN and CYNTHIA
DOMANN,

        Plaintiffs - Appellants,

    v.

DEBBIE VIGIL, M.D.,

        Defendant - Appellee.

No. 00-2270

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D. Ct. No. CIV-99-192-LH/LFG)**

---

Daniel R. Swiss (Turner W. Branch, Margaret Moses Branch, and James P. Lyle, with him on the briefs), The Branch Law Firm, Albuquerque, New Mexico, for Appellants.

Alice Tomlinson Lorenz (Jennifer L. Stone, with her on the brief), Miller, Stratvert & Torgerson, P.A., Albuquerque, New Mexico, for Appellee.

---

Before **TACHA**, Chief Judge, **HENRY**, and **LUCERO**, Circuit Judges.

---

**TACHA**, Chief Circuit Judge.

---

    In this medical malpractice case, appellants Ken and Cynthia Domann

challenge the jury verdict below as incomplete and inconsistent.  The Domanns

further appeal the district court's refusal to instruct the jury on one of their theories of negligence as well as the district court's exclusion of the Domanns' medical bills from evidence. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. Background

The Domanns moved to New Mexico in the spring of 1996. At the time, Mrs. Domann was pregnant. Upon arrival in New Mexico, she began receiving obstetrical care from the appellee, Dr. Debbie Vigil, M.D. On October 31, 1996, Dr. Vigil admitted Mrs. Domann to St. Vincent's Hospital after she had developed symptoms consistent with mild preeclampsia. Labor was induced and the following morning, a healthy baby girl was delivered. However, following delivery, Mrs. Domann's placenta did not deliver spontaneously. After Dr. Vigil and a consulting doctor, Dr. Cleveland Pardue, attempted unsuccessfully to remove the placenta manually, they made the decision to move Mrs. Domann to the operating room, place her under a general anesthesia, and further explore her uterus. Still, the placenta could not be removed and the doctors began to discuss the possibility of a hysterectomy.

At 10:35 a.m., Mrs. Domann suffered an unexpected cardiac arrest. After stabilizing Mrs. Domann's heart rate, Dr. Vigil decided to perform an immediate hysterectomy assisted by a second consulting physician, Dr. Lance Mikkelsen.

During the operation, due to high levels of blood loss during and following the delivery, Mrs. Domann's blood pressure could not be stabilized.

Following the hysterectomy, Dr. Vigil called for a further consultation with Dr. Bruce Shaffer. Dr. Shaffer examined Mrs. Domann in the operating room and diagnosed her with amniotic fluid emboli and systemic inflammatory response syndrome.[1] Amniotic fluid emboli can result in disseminated intravascular coagulopathy ("DIC"), a condition where the body's clotting system goes awry and microscopic clots are formed throughout the body blocking the blood supply to vital organs. At approximately 1:15 p.m., Dr. Shaffer ordered Heparin to treat what he believed was DIC induced by amniotic fluid emboli. Fresh frozen plasma was ordered but withheld from Ms. Domann while the Heparin was administered. Mrs. Domann received four units of fresh frozen plasma later that afternoon. Mrs. Domann remained hospitalized until February 10, 1997, when, after a stormy hospital course, she was released to a rehabilitation center. She continues to suffer peripheral nerve impairment and is still progressing in her recovery.

Following Mrs. Domann's release from the hospital, the Domanns filed suit

---

[1] An amniotic fluid embolism is an allergic reaction to the tissue of the baby entering the mother's circulation which can affect the heart's ability to pump effectively. Systemic inflammatory response syndrome is an immunologic reaction where the blood vessels start leaking the water that is contained in the blood, creating an inability to maintain adequate blood pressure.

against Dr. Vigil. The Domanns alleged that Dr. Vigil was negligent in the following ways: (1) by failing to properly recognize and manage extensive hemorrhaging during Mrs. Domann's post-partum course; (2) by failing to perform the hysterectomy soon enough to prevent Mrs. Domann's DIC; and (3) by failing to give the fresh frozen plasma soon enough and instead approving the decision of Dr. Shaffer to administer Heparin. Evidence was presented at trial by medical witnesses that Mrs. Domann had suffered an amniotic fluid embolism complicated by DIC and placental accreta[2] and that nothing could have been done by any doctor to improve her outcome.

On the other hand, the Domanns' medical expert, Dr. Richard Luciani, testified that Dr. Vigil was negligent in underestimating the amount of blood Mrs. Domann had lost leading to Mrs. Domann's cardiac arrest, in failing to immediately give Mrs. Domann fresh frozen plasma, and in allowing Dr. Shaffer to administer Heparin. However, at no point did Dr. Luciani testify that Dr. Vigil had a duty to perform the hysterectomy earlier than she did.

Following testimony, the Domanns submitted a special verdict form which was accepted by the district court. The special verdict form included two preliminary questions. The first asked the jury to determine whether Dr. Vigil

---

[2] Placenta accreta is a condition where the placenta has grown through the placental membrane and into the uterine wall.

-4-

had been negligent, and the second asked the jury to determine whether any negligence of Dr. Vigil had been the proximate cause of any of the Domanns' injuries. The Domanns also submitted jury instruction 28, which was subsequently given to the jury. Instruction 28 states:

> After considering the evidence and these instructions as a whole the preliminary questions presented for you to answer on the special verdict form are as follows:
>
> 1.     Was Dr. Debbie Vigil negligent?
>
> 2.     Was any negligence of Dr. Debbie Vigil a proximate cause of Ken and Cynthia Domann's injuries and damages?
>
> If you answer "no" to either question 1 or 2 on the special verdict form, you shall return the special verdict for Dr. Debbie Vigil and against Ken and Cynthia Domann.
>
> If, on the other hand, you answer "yes" to question 1 and 2, you shall determine the amount of money that will compensate Ken and Cynthia Domann for the injuries and damages, and you will otherwise answer the questions required of you on the special verdict form which I will hand to you at the conclusion of these instructions.

After the district court had read the instructions to the jury, the court asked counsel if there were any objections to the manner in which they were read. The Domanns' counsel stated that there were none.

After deliberations, the jury informed the court that it had reached a unanimous verdict. Upon reading the verdict, the district court noted that the first question on the special verdict form had been left blank. The jury foreman confirmed that the first question had not been filled out and subsequently

explained that the jury had been unable to reach a unanimous answer to the first question, but had unanimously answered "no" to the second question. Based on the jury's unanimous answer to the second question and on instruction 28, the trial judge accepted the verdict for Dr. Vigil and denied the Domanns' motion for a new trial.

## II. Jury Verdict

The Domanns now appeal the district court's denial of their motion for a new trial, arguing that the jury verdict was inconsistent and incomplete. We review a district court's refusal to grant a new trial based on a finding that the jury verdict is not inconsistent for abuse of discretion. Harvey ex rel. Harvey v. General Motors Corp., 873 F.2d 1343, 1346 (10th Cir. 1989) (holding that, when plaintiffs argue an inconsistent jury verdict this court will "not disturb the trial court's denial of a motion for a new trial absent a showing of abuse of discretion"); see also Harris Mkt. Research v. Marshall Mktg. & Communications, Inc., 948 F.2d 1518, 1522 (10th Cir. 1991). It is the additional burden of the appellant to show that any verdict inconsistency demonstrates "either confusion or abuse on the jury's part." Global Van Lines, Inc. v. Nebeker, 541 F.2d 865, 868 (10th Cir. 1976). In determining whether there is any inconsistency, we must accept any reasonable explanation that reconciles the jury's verdict. Harvey, 873 F.2d at 1348; Heno v. Sprint/United Mgmt. Co., 208 F.3d 847, 852 (10th Cir.

-6-

2000).

We find no abuse of discretion in the district court's determination that the jury verdict in this case was not inconsistent or incomplete. The general rule adopted by federal courts addressing this question is that "failure by a jury to answer some of the questions in a special verdict does not vitiate an otherwise unanimous verdict where the unanimous answers to the verdict conclusively dispose of the case." Black v. Riker-Maxson Corp., 401 F. Supp. 693, 696 (S.D.N.Y. 1975); see also Technical Res. Servs., Inc. v. Dornier Med. Sys., Inc., 134 F.3d 1458, 1466 (11th Cir. 1998) (holding jury verdict not inconsistent where jury unanimously determined that plaintiff failed to prove two elements necessary to recovery despite jury's failure to answer other questions on the special verdict form); Baxter Healthcare Corp. v. Spectramed, Inc., 49 F.3d 1575, 1581 (Fed. Cir. 1995) (holding that, where a jury fails to return unanimous answers to some of the questions on a special verdict form the "trial judge [can] enter judgment on the basis of the unanimous verdicts if they are dispositive of the case"); Audette v. Isaksen Fishing Corp., 789 F.2d 956, 958 (1st Cir. 1986) (holding that, where a jury returned with a unanimous finding of no proximate cause, but could not reach a unanimous finding on the question of negligence, the jury verdict was "simple to harmonize" and such a finding compelled "a judgment for defendant" (internal quotation marks omitted)); Skyway Aviation Corp. v. Minneapolis, Northfield &

Southern Ry. Co., 326 F.2d 701, 704 (8th Cir. 1964) ("The failure to agree on the unanswered interrogatory did not vitiate the otherwise unanimous verdict effectively disposing of the issues submitted.").

Therefore, the district court correctly determined that the special verdict form returned by the jury in this case was reconcilable and not inconsistent. Indeed, the jury was simply following the clear language of instruction 28 which provided that, should the jury reach a unanimous "no" answer to either of the preliminary questions on the special verdict form, they were to return a verdict in favor of Dr. Vigil. The jury was unanimous in finding that Dr. Vigil was not the proximate cause of any of the Domanns' injuries. Moreover, the Domanns concede in their brief before this court that, under New Mexico law, proximate cause is a necessary element to any recovery in tort. See, e.g., Coleman v. Eddy Potash, Inc., 905 P.2d 185, 190 (N.M. 1995). Thus, the jury properly returned a verdict in favor of Dr. Vigil, and the district court did not abuse its discretion in entering judgment on that verdict and denying the motion for a new trial.

### III. Jury Instructions

The second issue raised on appeal by the Domanns concerns a jury instruction that was submitted by the Domanns but not given by the district court. We review a district court's decision whether to give a particular jury instruction for abuse of discretion. Harrison v. Eddy Potash, Inc., 112 F.3d 1437, 1442 (10th

Cir. 1997), vacated on other grounds by Eddy Potash, Inc. v. Harrison, 524 U.S. 947 (1998). The Domanns' suit alleged that Dr. Vigil had been negligent by failing to perform the hysterectomy on Mrs. Domann soon enough. However, the Domanns failed to provide any expert medical testimony that the timing of the hysterectomy was in any way negligent or a deviation from the standard of care.

The legal substance of jury instructions in a diversity case such as this one is a matter of state law. Kieffer v. Weston Land, Inc., 90 F.3d 1496, 1500 (10th Cir. 1996). Under New Mexico law, in order to establish a deviation from the standard of care, medical expert testimony is required where the alleged negligence occurs within an area of knowledge in which laymen would be presumed uninformed. Gerety v. Demers, 589 P.2d 180, 195 (N.M. 1978); Pharmaseal Labs., Inc. v. Goffe, 568 P.2d 589, 594 (N.M. 1977). At the close of the evidence, Dr. Vigil objected to the inclusion of the jury instruction concerning the Domanns' delayed hysterectomy theory of negligence. Dr. Vigil objected on the grounds that no medical expert testimony had been offered to show that the timing of the hysterectomy was a deviation from the standard of care. The district court agreed and struck the delayed hysterectomy theory of negligence from the jury instructions. We find no abuse of discretion in this decision. The record contains no medical expert testimony stating that Dr. Vigil's decision to perform the hysterectomy when she did was negligent. Further, the Domanns cannot point

to any such testimony on appeal. The district court correctly excluded the instruction on the Domanns' delayed hysterectomy theory of negligence.

## IV. Conclusion

We hold that, when a jury instruction such as instruction 28 is given and a jury returns a special verdict form with a unanimous answer "no" to the question of proximate cause, it is not an abuse of discretion for the district court to enter judgment on that verdict and deny a motion for a new trial even where the jury could not reach a unanimous answer to the question of negligence. We further hold that the district court did not abuse its discretion when it excluded the jury instruction on a delayed hysterectomy theory of negligence. Finally, because we hold for Dr. Vigil on the issues discussed above, the question of whether the district court properly excluded evidence of the Domanns' medical bills from trial is moot. AFFIRMED.