**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 6 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

AEROTECH RESOURCES, INC., a
Florida corporation,

     Plaintiff-Appellee,

v.

DODSON AVIATION, INC., DODSON
INTERNATIONAL PARTS, INC., and
ROBERT L. DODSON, JR., a/k/a J.R.
Dodson,

     Defendants-Appellants.

No. 02-3080

(D.C. No. 00-CV-2099-CM)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **BALDOCK**, and **LUCERO**, Circuit Judges.

---

Plaintiff Aerotech Resources, Inc. filed a diversity action against Defendants

Dodson Aviation, Inc., Dodson International Parts, Inc., and Robert L. Dodson, Jr. See

28 U.S.C. § 1332. Plaintiff alleged (1) tortious interference with contract, (2) breach of

fiduciary duty, (3) fraudulent promise of a future event, and (4) fraud by silence. After a

two-week trial, the jury returned a verdict for Plaintiff on its fraud by silence claim, and

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

awarded $211,500 in damages. The jury denied Plaintiff relief on all other claims.

Defendants filed post-trial motions for renewed judgment as a matter of law, a motion for relief from judgment, and/or in the alternative, a motion for new trial. See Fed. R. Civ. P. 50(b), 59(a) and 60(b). The district court denied Defendants' motions in a published opinion. Aerotech Resources, Inc. v. Dodson Aviation, Inc., 191 F. Supp. 2d 1209 (D. Kan. 2002). On appeal, Defendants argue the district court erred in denying its post-trial motions because (1) the jury verdicts were inconsistent, (2) the jury's damage award was unsupported by the evidence, (3) the district court failed to properly instruct the jury, (4) the district court improperly excluded audiotape evidence, (5) the district court improperly excluded alleged "bribe" testimony, and (6) the district court erred in granting Plaintiff prejudgment interest. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

## I. Background

Plaintiff, a Florida corporation, entered into the airplane retail business. In June 1998, PluServicios, an Ecuadorian agency, contacted Plaintiff regarding the purchase of two airplanes. PluServicios informed Plaintiff that the Air Military Transport of Ecuador ("TAME") was looking for two airplanes to add to its fleet. Plaintiff, aware of a Boeing 727 in Kansas owned by Defendants, submitted a bid on Defendants' aircraft to offer to TAME. From that point on, the true nature of the business relationship between Plaintiff and Defendants is unclear. Plaintiff claims it only intended to broker the sale of

2

Defendants' aircraft to TAME. Defendants, on the other hand, claim Plaintiff intended to purchase the aircraft directly and resell it to TAME.

After the exchange of several preliminary purchase agreements, Defendants submitted an agreement to Plaintiff asking roughly $6.1 million for the aircraft and a $100,000 deposit. Meanwhile, Plaintiff was in contact with TAME's president, General Carlos Banderas, regarding the purchase of the aircraft. Plaintiff compiled documents for the aircraft purchase and paid for TAME representatives to travel to Kansas to view the aircraft. After viewing Defendants' aircraft, TAME sought confirmation that Plaintiff had the legal right to sell the aircraft. Defendants confirmed Plaintiff was its exclusive agent for the aircraft transaction. On November 18, 1998, TAME notified Plaintiff that its bid was selected and that Plaintiff needed to provide certain documents to complete the purchase. Plaintiff notified Defendants of TAME's offer to purchase, but failed to indicate that TAME was willing to pay $6.9 million for the aircraft.

Thereafter, PluServicios apparently contacted Defendants and informed them that TAME was willing to pay $6.9 million for the aircraft. The surprised Defendants claimed that Plaintiff should have told them the true price TAME was willing to pay for the aircraft. PluServicios also informed Defendants that TAME was unhappy with the way Plaintiff was handling the transaction. Defendants subsequently attempted to sell the aircraft directly to TAME without Plaintiff's knowledge. Plaintiff eventually discovered that Defendants were negotiating directly with TAME. Plaintiff also learned that

3

Defendants informed TAME it was unable to consummate the transaction.

On December 3, 1998, Defendants terminated Plaintiff due to Plaintiff's inability to close the deal. Thereafter, Plaintiff stopped all work on the transaction. Defendants, in an attempt to salvage the deal with TAME, continued to negotiate with TAME. In January 1999, however, negotiations failed when Defendants allegedly received information that General Banderas requested a kick-back or bribe from Plaintiff. Supposedly concerned with possible illegal implications, Defendants never sold their aircraft to TAME.

Plaintiff filed suit against Defendants in the District of Kansas alleging (1) fraud by silence, (2) tortious interference with contract, (3) breach of fiduciary duty, and (4) fraudulent promise of a future event.[1] Plaintiff claimed Defendants committed fraud by silence when they failed to inform Plaintiff they were working directly with TAME. Under Florida law, a claim for fraud by silence arises if a party fails to disclose material information and (1) a fiduciary relationship exists between the parties, *or* (2) material facts lie solely within the knowledge of one party and the other party does not have an equal opportunity to become apprised of those facts. Hooper v. Barnett Bank, 474 So.2d 1253, 1257 (Fla. App. 1985).

---

[1] The parties agree the alleged injuries occurred in Florida and that Florida law governs the disposition of these claims. See Ling v. Jan's Liquors, 703 P.2d 731, 735 (Kan. 1985) (under Kansas choice of law rules, the applicable law for tort claims is the law of the State where the aggrieved party suffered injury).

Second, Plaintiff claimed Defendants tortiously interfered with the aircraft transaction when Defendants contacted TAME without Plaintiff's knowledge. Under Florida law, a claim for tortious interference with contract arises if an advantageous relationship exists under which the plaintiff has legal rights and suffers damages as a result of defendant's intentional and unjustifiable interference with that relationship. Scheller v. American Medical Int'l, Inc., 583 So.2d 1047, 1048 (Fla. App. 1991). A cause of action for tortious interference with contract, however, may only exist against third parties who are not part of the primary contractual relationship. Chicago Title Ins. Co. v. Alday-Donalson Title Co., 832 So.2d 810, 814 (Fla. App. 2002).

Third, Plaintiff claimed Defendants breached their fiduciary duty as principals of Plaintiff when they interfered with Plaintiff's aircraft transaction. Under Florida law, a fiduciary relationship exists when a relation of trust and confidence between the parties is sufficient as a predicate for relief. Susan Fixel, Inc., v. Ronsenthal & Rosenthal, Inc., 842 So.2d 204, 207 (Fla. App. 2003). Breach of a fiduciary relationship occurs when the confidence reposed by one party and the trust accepted by the other has been acquired and abused. Id.

Finally, Plaintiff claimed Defendants made a fraudulent promise of a future event when they promised Plaintiff exclusive agency but later reneged by contacting TAME directly. Under Florida law, a claim for fraudulent promise of a future event occurs when, at the time a promise or representation was made, the defendant never intended to

5

perform or intended to deceive or defraud plaintiff. Gandy v. Trans World Computer Tech. Group, 787 So.2d 116, 119 (Fla. App. 2001) (a promise to perform in the future, "coupled with the lack of intent to perform at the time the misrepresentation is made, is actionable in Florida"). In the end, the jury returned a verdict in favor of Plaintiff on its fraud by silence claim but found in favor of Defendants on all other claims.

## II.  Inconsistent Jury Verdicts

Defendants first argue the jury verdict in favor of Plaintiff on its fraud by silence claim is inconsistent with the jury verdicts in favor of Defendants on the claims of tortious interference with contract, breach of fiduciary duty, and fraudulent promise of a future event. The district court held the jury verdicts were not inconsistent and we agree. To assert an inconsistent verdict claim, the party challenging the verdict generally must show they objected to the verdict prior to the jury's discharge. Oja v. Howmedica, Inc., 111 F.3d 782, 790 (10th Cir. 1997). If the party challenging the verdict fails to properly object, they must show the verdict is facially inconsistent such that entry of judgment upon the verdict is plain error. Id.

The party challenging the verdict bears the burden of showing that the inconsistent verdict demonstrates jury confusion or abuse. Domann v. Vigil, M.D., 261 F.3d 980, 983 (10th Cir. 2001). In determining whether the verdicts are inconsistent, we accept any reasonable explanation that reconciles the jury's verdict. Id. A jury verdict that resolves separate and distinct causes of action in favor of both parties is not facially inconsistent.

6

Oja, 111 F.3d at 790.  In contrast, when "several causes of action are identical and defended on the same ground, a verdict for the plaintiff on one cause of action and for the defendant on another is inconsistent."  Id. at 790-91.

In this case, Defendants concede they failed to object to the verdict on grounds of inconsistency prior to the jury's discharge.  Therefore, Defendants must show the jury's finding of fraud by silence for Plaintiff is facially inconsistent with its finding of tortious interference with contract, breach of fiduciary duty, or fraudulent promise for Defendants.  Oja, 111 F.3d at 790.[2]  Defendants fail to carry their burden.  First, a reasonable explanation exists for the jury's finding of fraud by silence *but not* tortious interference with contract.  The two claims are completely separate and distinct.  Jury verdicts that resolve separate and distinct causes of action are not facially inconsistent.  Id.  Tortious interference with contract requires, among other things, the intervening party to be a stranger to the contractual relationship.  Chicago Title, 832 So.2d at 814.  Here, the jury may have found Defendants were not strangers to the contractual relationship between Plaintiff and TAME given the numerous preliminary purchase agreements exchanged with Plaintiff.  Therefore, the jury could reasonably have found that Defendants did not tortiously interfere with any contract *while at the same time* finding Defendants engaged

---

[2]  Defendants argue Florida's economic loss rule supports a finding of inconsistency.  Defendants, however, did not raise this argument in the district court.  Therefore, we will not consider the economic loss argument.  See Vitkus v. Beatrice Co., 127 F.3d 936, 946 (10th Cir. 1997).

in fraud by silence by failing to disclose material information.

Second, a reasonable explanation exists for the jury's finding of fraud by silence *but not* breach of fiduciary duty. Defendants argue the only basis for a fraud by silence claim is the existence of a fiduciary duty. Defendants claim that because the jury found they did not breach any fiduciary duty, no fraud by silence occurred. Defendants misunderstand Florida law. Under Hooper, 474 So.2d at 1257, a fraud by silence claim may exist, notwithstanding the absence of any fiduciary relationship, if material facts lie solely within the knowledge of one of the parties and the other party does not have an equal opportunity to become apprised of those facts. Therefore, the jury could have reasonably found Defendants possessed material facts outside Plaintiff's knowledge and failed to disclose those facts *while at the same time* finding Defendants did not owe Plaintiff any fiduciary duty.

Finally, a reasonable explanation exists for the jury's finding of fraud by silence *but not* fraudulent promise of a future event. A fraudulent promise of a future event requires proof the promisor had the intent (1) not to perform the promise from its inception, or (2) an intent to deceive the promisee. Gandy, 787 So.2d at 119. Fraud by silence, however, merely requires a material non-disclosure of facts that cannot be obtained by the other party. Here, the jury reasonably concluded that Defendants did not intend to deceive Plaintiff when they originally made certain promises but that material facts later arose which should have been disclosed.

8

Based on the foregoing, the verdicts in this case can be reasonably reconciled. Thus, we conclude that the district court's entry of judgment upon the verdicts did not constitute plain error.

### III. Sufficiency of the Evidence

Defendants next argue the damage award of $211,500 is contrary to the evidence and that the district court erred in denying Defendants' motion for a remittitur or, in the alternative, failing to order a new trial. In its thorough order denying Defendants' motions, the district court held Defendants failed to show the $211,500 damage award was decidedly or overwhelmingly against the weight of the evidence. See Aerotech Resources, Inc., 191 F. Supp. 2d at 1223-24. After careful review of the record, we agree.

Federal law governs the district court's remittitur decision in a diversity case. Blanke v. Alexander, 152 F.3d 1224, 1236 (10th Cir. 1998). We review a district court's remittitur decision for an abuse of discretion. United Int'l Holdings, Inc. v. Warf (Holdings) Ltd., 210 F.3d 1207, 1229 (10th Cir. 2000) (the district court's remittitur decision will not be disturbed absent a gross abuse of discretion). In a sufficiency of the evidence claim, the party challenging the sufficiency of the evidence bears the heavy burden of showing that the verdict was "'clearly, decidedly, or overwhelmingly against [the] weight of the evidence.'" Blanke, 152 F.3d at 1236 (quoting Campbell v. Bartlett, 975 F.2d 1569, 1577 (10th Cir. 1992)). Further, "absent an award so excessive or

inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption, or other improper cause invaded the trial, the jury's determination of the fact is considered inviolate." Id. (internal citations omitted).

Plaintiff argued to the jury it was entitled to $564,000 in lost profits resulting from Defendants' fraudulent acts. The record suggests Plaintiff may have suffered at least $547,163 in lost profits. Specifically, Plaintiff presented evidence it was to purchase the aircraft from Defendants for $5.65 million and re-sell it to TAME for $6.9 million; making a $1.25 million profit. Plaintiff, however, was required to subtract roughly $702,837 for commissions and costs to repair the aircraft, leaving it with $547,163 in lost profits. Plaintiff also presented evidence it generally incurred other costs in closing the sale with TAME such as travel, time, and administrative expenses.

Nevertheless, Defendants argue that even if Plaintiff is entitled to lost profit damages, the jury's damage award is uncertain and unsupported by the evidence. Specifically, Defendants assert the only way the jury could have arrived at the $211,500 figure is through a commission based analysis. Defendants correctly point out that Plaintiff presented no evidence showing it agreed to be paid a commission. Although both parties spend a significant amount of time hypothesizing about the possible methods the jury used when calculating damages, we have no way of knowing how the jury specifically "crunched" the numbers. The verdict form only states the amount of damages and the date the damages accrued. Further, Defendants did not object to the form of the

10

verdict.  Thus, any "mystery" regarding how the jury calculated the damages is partially Defendants' fault.

We will not second guess the jury.  Campbell, 975 F.2d at 1577.  The determination of damages is traditionally a jury function and we will not disturb the verdict unless the award is so excessive as to shock the judicial conscience.  Id.  As the district court stated, "[t]he jury heard all the evidence submitted in this case, and it is not for the court to state definitively the reason for the jury's damage award." Aerotech, 191 F.Supp. 2d at 1225.  We agree with the district court that the jury could have reasonably concluded, based upon the evidence presented, that Plaintiff would have profited at least $211,500 absent Defendants' fraudulent behavior.  Id.  Moreover, the damages awarded to Plaintiff are not excessive.  Plaintiff originally argued it was entitled to roughly $564,000 in damages and, as explained above, the evidence supported a finding of at least $547,000 in lost profits.  The jury, however, only awarded $211,500 in damages.  This damage award does not shock the judicial conscience.  Therefore, the district court did not abuse its discretion in denying Defendants' motion.

## IV.  Failure to Instruct

Defendants next claim the district court erred in failing to give Defendants' proposed instruction on "estoppel."   In relevant part, Defendants' "estoppel" instruction stated, "if an agent breaches a duty owed to its principal, the agent is not entitled to, or is estopped from, claiming any right to compensation." Aerotech, 191 F. Supp. 2d at 1228.

11

The district court held Defendants' failed to properly object to the exclusion of their estoppel instruction prior to the jury's discharge and failed to show prejudice.

"Instructional error requires reversal only if the error is determined to have been prejudicial, based on a review of the record as a whole." Davoll v. Webb, 194 F.3d 1116, 1131 (10th Cir. 1999). Pursuant to Fed. R. Civ. P. 51, "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, *stating distinctly the matter objected to and the grounds of the objection*." (emphasis added). "[A] general objection that does not inform the court of the party's grounds for disagreement will not suffice." Giron v. Corrections Corp. of Am., 191 F.3d 1281, 1289 (10th Cir. 1999). If a party fails to properly object to an instruction under Rule 51, we review the district court's failure to instruct under the plain error standard. Id. Under this standard, we will reverse only in "an exceptional circumstance - one where the error was patently plainly erroneous and prejudicial." Id. (internal citations omitted).

In this case, the district court noted that during the instruction conference, Defendants only objected to the exclusion of its estoppel instruction in the context of Plaintiff's breach of fiduciary duty claim and failed to adequately object in the context of Plaintiff's fraud by silence claim. Aerotech, 191 F. Supp. 2d at 1228. After reviewing the record, we agree. Although Defendants adequately objected to the district court's failure to proffer their estoppel instruction in the context of Plaintiff's fiduciary duty

12

claim, they failed to even propose, much less object to, the court's exclusion of the instruction in the context of any other claim. Thus, Defendants failed to state "distinctly the matter objected to and the grounds of the objection" as required by Rule 51. Therefore, the next step in our analysis is to determine whether the district court committed plain error by excluding Defendants' estoppel instruction. Giron, 191 F.3d at 1289.

For the exclusion of an instruction to constitute plain error, it must be plainly erroneous and prejudicial. Id. Here, as the district court correctly noted, the exclusion of Defendants' instruction was not prejudicial. Defendants were not prejudiced because they clearly proffered their estoppel instruction only in the context of Plaintiff's breach of fiduciary duty claim which the jury found in favor of Defendants. Although Defendants claim they also proffered their estoppel instruction within the context of Plaintiff's other claims, our review of the record shows otherwise. For example, one of Defendants' proposed jury instructions reads:

> If you determine that there was a business relationship entered into between the parties whereby the defendant was a principal and the plaintiff was a broker with regard to the proposed sale of the subject aircraft to TAME then the parties were in a *confidential relationship* with each other, *owed to each other a fiduciary duty* and were bound to act *in good faith* with regard to each other. This *relationship* imposed on the defendant the duty to remain loyal to the interests of the plaintiff and to not act to the exclusion of plaintiff's interests. *Conversely this relationship imposed on the plaintiff the duty to remain loyal to the interests of the defendants . . . .*

This instruction shows Defendants' estoppel argument is closely connected with

13

Plaintiff's breach of fiduciary duty claim. Likewise, while moving for a directed verdict at trial, Defendants' stated:

> Aerotech's withholding material information to Dodson, such as the price of the airplane, such as their agreement with PluServicios, such as TAME's requirements for buying the aircraft, *as a matter of law preclude Aerotech's right to get any commission from Dodson for any breach of fiduciary duty claim that was owed by Dodson*.

This statement also shows that Defendants specifically raised their estoppel instruction only in the context of Plaintiff's breach of fiduciary claim.

After reviewing the record, we are simply unable to discover any proposed "estoppel" instruction which Defendants proffered that fit within the context of Plaintiff's other claims. Because Defendants prevailed on the breach of fiduciary duty claim, Defendants did not suffer any prejudice and the district court's exclusion of the estoppel instruction did not constitute plain error.

## V. Exclusion of the Audiotape

Defendants also argue the district court erred in excluding an audiotape from evidence for failure to disclose and improper foundation. We review the district court's exclusion of evidence for an abuse of discretion. United Int'l Holdings, Inc., 210 F.3d at 1230. "Decisions on evidentiary matters lie within the sound discretion of the district court . . . ." Orjias v. Stevenson, 31 F.3d 995, 999 (10th Cir. 1994).

Pursuant to Fed. R. Civ. P. 26(a)(1)(B), a party must automatically disclose "a copy of, or a description by category and location of, all documents, data compilations,

14

and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment." Further, Rule 26(e)(1) requires a party to supplement or amend its disclosures and discovery responses if it learns the information disclosed or the response is somehow incomplete or incorrect. To ensure compliance with the initial disclosure requirements, Rule 37(c)(1) provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial . . . any witness or information not so disclosed."

A proper foundation must be laid before a relevant audiotape can be admitted into evidence. United States v. Cook, 794 F.2d 561, 567 (10th Cir. 1986). Additionally, "authentication" is a "condition precedent" to the admissibility of evidence. Fed. R. Evid. 901. A party may authenticate an audiotape in several ways. See, e.g., United States v. Green, 175 F.3d 822, 830 n.3 (10th Cir. 1999). The recording, however, must be complete without any changes, additions, or deletions. Id. Ultimately, determinations of the admissibility of an audiotape and its authenticity "have repeatedly been held to be within the purview of the sound discretion of the trial judge." United States v. Brinklow, 560 F.2d 1008, 1011 (10th Cir. 1977).

In this case, the district court held the audiotape was inadmissible for several reasons. First, the district court explained the audiotape was inadmissible "based on

15

[D]efendants' failure to previously produce the tape in response to [P]laintiff's request for information and on [D]efendants' failure to supplement pursuant to Fed. R. Civ. P. 26." Aerotech, 191 F. Supp. 2d at 1230. Defendants, however, claim they did not violate Rule 26's disclosure requirements because they only planned to use the audiotape as impeachment evidence. Further, Defendants claim that absent a duty to disclose, no duty to supplement exists under Rule 26(e)(1). Defendants are correct in pointing out that Rule 26(a)(1)(B) does not require automatic disclosure of information used "solely for impeachment." After reviewing the record and the district court's order, however, it's fair to say that the district court concluded the information in the audiotape was offered for more than just impeachment purposes. We generally defer to the district court's decision requiring disclosure if the court determines the evidence is offered for reasons other than impeachment. See Searles v. Van Bebber, 251 F.3d 869, 877 (10th Cir. 2001). Therefore, we hold that the district court did not abuse its discretion when it excluded the audiotape because of Defendants' failure to disclose.

Further, the district court did not abuse its discretion when it excluded Defendants' audiotape for improper foundation. As stated, an important factor to consider regarding the admissibility of a sound recording is whether changes, additions, or deletions have been made to the recording. Green, 175 F.3d at 830 n.3. Here, the district court was particularly concerned with the audiotape because the taped conversation was not complete, the audiotape offered at trial was a copy of the original, the date of the

16

recording was unknown, and the person who copied the audiotape was unavailable at trial. Aerotech, 191 F. Supp. 2d at 1230. After listening to the audiotape included in the record, we agree with the district court and conclude that the authenticity of the tape is questionable. "The trial court is in a unique position to consider whether the foundation upon which the recording is being admitted insures the authenticity of the recording." Brinklow, 560 F.2d at 1011. Given our deference to the district court regarding evidentiary matters, the court's decision to exclude the audiotape was not an abuse of discretion.

## VI. Exclusion of "Bribe" Testimony

Defendants argue the district court erred in excluding deposition testimony of an alleged "bribe" between General Banderas of TAME and Plaintiff. The district court held, among other things, that the testimony was irrelevant under Fed. R. Evid. 401 and unfairly prejudicial under Fed. R. Evid. 403. Defendants claim the evidence regarding the "bribe" is relevant because, among other things, it shows (1) possible violations of the Foreign Corrupt Practices Act, or (2) the reason negotiations between Plaintiff and Defendants failed. The district court believed Defendants proffered the bribe testimony primarily to show why Defendants stopped negotiating with Plaintiff and why they began to negotiate with TAME directly. Accordingly, the district court concluded that the bribe testimony was irrelevant because Defendants did not learn of the alleged bribe until well after Defendants terminated its agency relationship with Plaintiff.

17

Evidentiary rulings are reviewed for abuse of discretion.  United Int'l Holdings Inc., 210 F.3d at 1230.  Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  All relevant evidence is generally admissible.  Fed. R. Evid. 402.  Relevant evidence can be excluded, however, pursuant to Fed. R. Evid. 403 if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  A district court has broad discretion to determine whether prejudice inherent in otherwise relevant evidence outweighs its probative value.  United States v. Youts, 229 F.3d 1312, 1319 (10th Cir. 2000).

The record supports the district court's decision to exclude the bribe testimony on grounds of relevancy.  Statements Defendants made on the record support the district court's conclusion that Defendants were offering the bribe testimony to explain why it terminated Plaintiff.  For example, in Defendants' opposition to Plaintiff's motion in limine requesting the court to exclude the bribe testimony, Defendants stated "if Dodson believed that TAME was expecting a kick-back or bribe, and Defendant Dodson believed that expectation was illegal, then such belief is relevant as to Mr. Dodson's state of mind as it relates to any action he took as a result of that state of mind."  Placing this statement into context, we can easily see why the district court believed the evidence was irrelevant.

As the facts show, Defendants terminated their business relationship with Plaintiff on December 3, 1998. Defendants did not learn of any alleged bribe, however, until January 26, 1999. Consequently, evidence of the bribe was irrelevant to show why Defendants terminated Plaintiff. Thus, the district court did not abuse its discretion in excluding the evidence under Rule 401.[3]

More importantly, even if the bribe testimony was marginally relevant to an issue in the case, the district court did not abuse its discretion in finding the evidence's probative value outweighed by the danger of unfair prejudice under Rule 403. The bribe testimony was inflammatory and prejudicial because it connoted possible illegal activity. Additionally, testimony regarding the alleged bribe could have increased possible jury confusion because many issues and facts were raised during this two-week trial. Finding no evidence in the record to the contrary, we uphold the district court's exclusion of the bribe testimony under Rule 403.

## VII. Prejudgment Interest

Defendants lastly claim the district court erred in awarding Plaintiff $54,444.80 in prejudgment interest under Florida law. The district court held Plaintiff was entitled to prejudgment interest because "by awarding damages to plaintiff, the jury determined that

---

[3] Although Defendants claim the bribe testimony is also relevant to show possible violations of the Foreign Corrupt Practices Act, this argument was not adequately raised before the district court; therefore, we will not consider the argument. See Vitkus, 127 F.3d at 946.

plaintiff had lost something of monetary value." Aerotech, 191 F. Supp. 2d at 1218.

Further, the court noted "the jury determined that [P]laintiff 'sustained . . . damages as a

result of [D]efendants' actions' as of 'November 23, 1998.'" Id. Defendants claim the

district court erred in awarding prejudgment interest because Plaintiff suffered minimal

*actual* "out-of-pocket losses." We hold the district court's decision is consistent with

Florida law.

An award of prejudgment interest lies within the sound discretion of the district

court. Kleier Advertising, Inc. v. Premier Pontiac, Inc., 921 F.2d 1036, 1040 (10th Cir.

1990). We review the grant or denial of prejudgment interest for an abuse of discretion.

Id. Prejudgment interest in a diversity action is a substantive matter governed by state

law. Webco Indus., Inc. v. Thermatool Corp., 278 F.3d 1120, 1134 (10th Cir. 2002). The

parties agree that Florida law is the correct choice of law. See supra at 4 n.1.

Under Florida law, when a verdict liquidates damages for a plaintiff's out-of-

pocket pecuniary losses, the plaintiff is entitled to prejudgment interest at the statutory

rate from the date of loss. Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212, 214-

15 (Fla. 1985). A claim is "liquidated" when the verdict awards damages as of a certain

date. Id. The term "out-of-pocket losses," to which prejudgment interest can apply, is not

limited to *actual* out-of-pocket losses but can include most monetary losses that are

liquidated by a jury verdict. Siedlecki v. Arabia, 699 So.2d 1040, 1042 (Fla. App. 1997).

Further, the Florida Supreme Court has made clear that "neither the merit of the defense

20

nor the certainty of the amount of loss affects the award of prejudgment interest. Rather, *the loss itself is a wrongful deprivation by the defendant of the plaintiff's property.* Plaintiff is to be made whole from the date of the loss once a finder of fact has determined the amount of damages and defendant's liability therefor." Argonaut, 474 So.2d at 215 (emphasis added).

In this case, Defendants misunderstand the term "out-of-pocket losses." According to Defendants, prejudgment interest should only apply to expenses *actually* paid "out-of-pocket" and should not apply to any lost profits or benefits. Under Florida law, however, only some ascertainable monetary loss as established by a jury verdict is required. Siedlecki, 699 So.2d at 1042 (upholding an award of prejudgment interest on the jury's damage award, the court of appeals explained that by "awarding damages to [plaintiff], the jury determined that [plaintiff] [had] lost something, i.e., his potential investment, which held certain monetary value"); See also Air Prod. and Chem., Inc. v. La. Land and Exploration Co., 867 F.2d 1376, 1380 (11th Cir. 1989) (applying Florida law, the court stated "once a court determines liability and damages, prejudgment interest is also due").

Here, the jury found Plaintiff was wrongfully deprived of its expected benefit under the TAME bargain due to Defendants' fraudulent actions. Plaintiff's expected benefit of the TAME bargain had a monetary value of $211,500 as determined by the jury. Further, the jury fixed the damages as of a certain date. Therefore, Florida law

21

required Plaintiff to be made whole from the date of its loss.  <u>Argonaut</u>, 474 So.2d at 215.

Accordingly, the district court did not abuse its discretion when it awarded Plaintiff

prejudgment interest.

AFFIRMED.


Entered for the Court,


Bobby R. Baldock
Circuit Judge